Jerry K. CLARK et al.

v.

The UNITED STATES.

No. 449–70.

United States Court of Claims.

June 16, 1972.

David H. Bodiker, Columbus, Ohio, for plaintiffs. Dwight A. Teegardin, Columbus, Ohio, atty. of record.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

SKELTON, Judge.

The plaintiffs, Jerry K. Clark, Kenneth L. Gebhart, William E. Masters, Harold L. Miller, John E. Murrell, and Ronald K. Williams, have filed this suit against the United States claiming damages in the total sum of $263,935.40 for an alleged breach of contract. We have concluded that the plaintiffs are not entitled to recover.

The facts are basically as follows. The plaintiffs were members of the Air National Guard with membership in the Reserve components of the United States Air Force. Each of them had executed a Ready Reserve Agreement as follows:

READY RESERVE AGREEMENT

\*　　\*　　\*　　\*　　\*　　\*

I agree to (accept) or (retain) membership in the Ready Reserve for a period to expire on the date of my ~~fifth~~ first annual Military Personnel Record Review (or the date of expiration of my enlistment whichever comes earlier), following the effective date of this agreement.

I certify that I am immediately available for extended active duty (1) in time of war or National emergency declared by Congress; (2) in a National emergency declared by the President, or (3) when otherwise authorized by law. I understand the Air Force can in the event of partial or full mobilization, order me to enter active military service at any time during the period of this agreement. I am fully aware of my eligibility for Standby status under chapter 39, AFM 35-3, and during the period of this agreement, hereby waive my rights to Standby status under any criteria for which I am presently eligible. I understand that:

a. I will not be released from this agreement unless there is a change in my status, and upon such change, I submit a request for transfer to the Standby Reserve and such request is approved under the eligibility criteria established in chapter 39, AFM 35-3.

b. No request for transfer to the Standby Reserve will be accepted after the date of an alert or notice of mobilization.

c. This agreement will become effective on the date indicated above or the date I am officially assigned whichever comes later.

d. This agreement terminates upon reassignment from the Kansas Air National Guard.

Signature of Member
[Signed]

These agreements expired prior to January 26, 1968. The plaintiffs refused to execute new agreements, but continued to serve in a Ready status, reported for drill, received pay and allowances therefor, and acquired points for retirement after their agreements had terminated. All of them were called to active duty on January 26, 1968, and served in such capacity until they filed suit in the United States District Court for the District of Columbia seeking release from active duty. Judge Gasch of that court ordered the plaintiffs released from active duty because of the provi-

sions of Air Force Manual 35–3, paragraph 39–7, subparagraph c(2) (a), which provides in effect for an annual screening to be made of personnel in the Ready Reserve, and if the reservist's Ready Reserve Agreement expires on the date of the interview or within 12 months thereafter, the reservist will be required to execute a new agreement. If he does not renew his agreement, he will be immediately assigned to the Standby Reserve. This regulation was not followed in this case, and the plaintiffs were released from active duty by order of the District Court.[1]

Thereafter, the plaintiffs filed this suit claiming damages for lost wages, retirement credits, job experience and training, employment and advancement opportunities, loss of the society of their families, involuntary risk of their lives, deprivation of property in violation of the Fifth Amendment to the United States Constitution, and involuntary servitude in violation of the 13th Amendment to the Constitution. The defendant filed a motion for summary judgment, and the plaintiffs filed a cross-motion for summary judgment.

■■ The main thrust of plaintiffs' claims is that the foregoing damages resulted from a breach of the Standby Agreement by the government. This contention is without merit for several reasons. The agreement was not signed by the government. It was more in the nature of a consent by plaintiffs to accept active service in time of emergency and a waiver on their part of their rights to Standby status during the period of the agreement. Even if it could be said that the government became bound by its acceptance of the agreement, a careful reading of the document shows that it imposed no obligation on the government. The plaintiffs say that the Air Force should have transferred them to the Standby Reserve at the end of their agreements because of the provisions of the agreements. We find no such obligation in the agreements, espe-

cially in view of the fact the plaintiffs never requested a transfer to the Standby Reserve.

Even if it could be said, arguendo, that the agreements imposed obligations on the Air Force, the plaintiffs have no claim for breach of contract because the agreements terminated by their own provisions more than three months before the plaintiffs were called to active duty. In other words, the events of which plaintiffs complain occurred long after their Standby Agreements had expired. Therefore, the action taken by the Air Force was not a breach of the terminated agreements.

■ It is clear that the claims of the plaintiffs sound in tort. They are based on the violation of the above-cited regulation by the Air Force. This court does not have jurisdiction of tort claims. See 28 U.S.C. § 1491; Eastport Steamship Corp. v. United States, 372 F.2d 1002, 178 Ct.Cl. 599 (1967).

■ There is no necessity for us to transfer this case to a District Court because the Tort Claims Act, 28 U.S.C. § 2680, expressly prohibits suits against the United States on:

§ 2680. Exceptions.

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, * * *.

It is fundamental that the government has sovereign immunity from suits unless such immunity has been waived by an Act of Congress. It cannot be sued without its consent. See United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940) and United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). There is no such consent with respect to plaintiffs' claims in the case before us.

1. This decision was affirmed by the U.S. Court of Appeals for the D.C. Circuit, on May 29, 1969, Clark v. Brown (134 U.S.App.D.C. 263, 414 F.2d 1159).

There is no merit to plaintiffs' claims that the government has deprived them of their property in violation of their rights under the Fifth Amendment to the Constitution. They have not shown that the government has taken any of their property within the meaning of the Fifth Amendment.

Furthermore, the plaintiffs have failed to show that the government subjected them to involuntary servitude in violation of their rights under the 13th Amendment to the Constitution. They were commissioned Reserve officers appointed by the President in accordance with 10 U.S.C. § 593 for an indefinite term. They accepted the appointments, served on active duty, and were paid for their service. They served during the pleasure of the President, as provided by the statute. Under these circumstances, there was no involuntary servitude. In any event, such a claim sounds in tort and cannot be considered by this court.

In view of the conclusions we have reached as set forth above, it is unnecessary to consider other contentions made by the plaintiffs and the defendant.

The defendant's motion for summary judgment is granted and the cross-motion of the plaintiffs is denied, and plaintiffs' petition is dismissed.