Allen Aaron JACKSON

v.

The UNITED STATES.

No. 259–76.

United States Court of Claims.

March 22, 1978.

James M. Garlock, San Francisco, Cal., attorney of record for plaintiff, Belli & Choulos, Melvin M. Belli, and Morris Beatus, San Francisco, Cal., of counsel.

Sandra P. Spooner, with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant, Levator Norsworthy, Jr., Washington, D. C., of counsel.

Before SKELTON, Senior Judge, and KUNZIG and BENNETT, Judges.

## ON DEFENDANT's MOTION TO DISMISS

SKELTON, Senior Judge:

This is the second time this case has been before this court. Our prior opinion, which denied any recovery to plaintiff and which dismissed his petition, is found in *Jackson v. United States,* 551 F.2d 282, 213 Ct.Cl. 354, *vacated and remanded,* 434 U.S. 947, 98 S.Ct. 471, 54 L.Ed.2d 307 (1977).

The facts show that the plaintiff enlisted in the United States Army Reserve on January 24, 1974, for a period of 6 years. At that time he signed the following enlistment documents:

(1) Department of Defense Form 4 (DD4), Enlistment Contract—Armed Forces of the United States. This form showed his enlistment as a private in the USAR (Delayed Entry) for a period of 6 years, and contained the oath of enlistment which he signed.

(2) Department of the Army Form 3286 (DA3286), Statement for Enlistment, Parts I through V, in which the plaintiff changed his 6-year enlistment in the Army Reserve to a 3-year enlistment in the Regular Army in order that he might receive on-the-job training (OJT) in mechanical maintenance. This form contained the following acknowledgments:

> Part I—General Statement of Understanding. (To be completed by all applicants for enlistment or reenlistment in the Regular Army)

In connection with my enlistment in the Regular Army, I hereby acknowledge that:

### ACKNOWLEDGMENT

All promises made to me are contained in Items 3 (Rate/Grade), 37 (Rate/Grade Appointed/Reappointed) 48 (Untitled Item) of the DD Form 4, my Enlistment Contract.

\*   \*   \*   \*   \*   \*

My choice of initial enlistment option shown in Item 48 of my DD Form 4 does not constitute any guarantee that a substantial part of my enlistment will be served in this option, and the needs of the service may result in my transfer at any time (other than as may be provided by the specific option selected) to any other assignment within the continental United States or to an overseas command.

(3) Statement For Enlistment, Delayed Entry Program, Form 3286–32–R. This form contained the following acknowledgments and provisions:

TO BE COMPLETED BY ALL APPLI-CANTS ENLISTING FOR THIS OPTION.

ACKNOWLEDGMENT: In connection with my enlistment in the United States Army Reverse, I hereby acknowledge that:

a. My enlistment in the US Army Reserve obligates me to a total of 6 years of service in the Armed Forces of the United States, including service in the Reserve Components, unless sooner discharged by proper authority.

    *     *     *     *     *     *

d. The combined time served in the Reserve prior to entry on active duty and active duty will be creditable for my 6-year obligation.

e. I volunteer to serve on active duty for 3 (enter number) years in my job assignment specified by the Army, such period to begin within 180 days unless I enlist in the Regular Army, or I am granted further delay by proper authority.

    *     *     *     *     *     *

g. In lieu of performing the active duty specified in e above, I may enlist in the Regular Army for not less than 3 (enter number) years with the following understanding:

(1) Upon enlistment in the Regular Army, I will be enlisted under the provisions of AR 601–210, *Table* 5–41 (Enter the appropriate table number and the title of the enlistment option(s) for which enlisting. Only tables for which a "yes" entry is included in Column 7, Table 5–1, may be entered here.)

(2) If enlisting for an Army school course, I am assured of attending school course *1st Inf Div (M) Ft. Riley, Ks and OJT MOS 63 ATO (Mechanical Main.)* (Enter school course title and course number.)

    *     *     *     *     *     *

(5) The date of my enlistment in the Regular Army is scheduled for *25* (Day) *Feb.* (Month) *74* (Year).

UNDERSTANDING: I have read and understand each of the statements above and the statements contained in other parts of DA Form 3286, signed by me, and understand that they are intended to constitute all promises whatsoever concerning my enlistment. Any other promise, representation, or commitment made to me in connection with my enlistment is written below in my own handwriting, or is hereby waived. (If none, write "None.")

X None. [The word "none" is in plaintiff's handwriting and all blank space entries were filled in by him in writing.]

On February 25, 1974, one month after plaintiff signed the foregoing enlistment papers, he was inducted into the Regular Army. On that date he signed the following Army enlistment papers:

(1) Army Enlistment Form (DD Form 4) which shows that plaintiff was honorably discharged from the Army Reserve on February 24, 1974, and that he enlisted in the Regular Army on February 25, 1974, for 3 years as follows:

PVIE–1 "NA," "ENL FOR SUE ENL OPT (TABLE 5–41) 1ST INF DIV, FT RILEY, KS AND MOS 63A10 MECH MAINT."[1]

He also signed the oath of enlistment on that date for 3 years of service in the Regular Army.

(2) Statements For Enlistment, Part VI—United States Army Special Unit Enlistment Option, DA Form 3286–47–R, dated February 25, 1974, providing as follows:

---

1. These abbreviations meant "Private-1, enlisted for special unit enlistment under option (Table 5–41) with the 1st Infantry Division, Ft. Riley, Kan., and military occupational specialty 63A10 of mechanical maintenance."

The abbreviations in the enlistment papers are defined as follows: "ENL" means enlistment. "SUE" means special unit enlistment;

"OPT" means option; "MOS" means military occupational specialty, such as mechanical maintenance; "AIT" means advanced individual training; "OJT" means on-the-job training; and "63A10, MECH MAINT" refers to military occupational specialty 63A10, mechanical maintenance helper.

Section I

ACKNOWLEDGMENT: In connection with my enlistment in the Regular Army for the United States Army Special Unit Enlistment Option, I hereby acknowledge that:

(a) My enlistment for this option assures me that, provided I meet required prerequisites, I will be assigned to 1st Inf Div, Ft. Riley, KS (Enter the unit for which enlisting.)

b. Unless I have previously completed basic or basic combat training (BCT) and served in the Army or Marine Corps in the past 3 years, I must complete BCT prior to undergoing advanced individual training (AIT).

c. Upon completion of BCT, I will undergo AIT in military occupational specialty.

MOS (OJT) 63A10 Mechanical Maintenance.

(Enter the MOS for which enlisted.)

\*   \*   \*   \*   \*   \*

Section III

ACKNOWLEDGMENT: In connection with my enlistment in the Regular Army for the United States Army Special Unit Enlistment Option, I hereby acknowledge that:

a. I am guaranteed assignment to the unit for which enlisted for a minimum of 16 months or normal tour length if enlisting for a short tour area after arrival at the unit for which enlisted, except as indicated below. Upon completion of the guaranteed period of stabilization in the unit for which enlisted, I may be reassigned in accordance with the needs of the Army.

\*   \*   \*   \*   \*   \*

g. My term of enlistment is for 3 years.

\*   \*   \*   \*   \*   \*

2. UNDERSTANDING: I have read and understand each of the statements above and the statements contained in other parts of DA Form 3286, signed by me, and understand that they are intended to constitute all promises whatsoever concerning my enlistment. Any other promise, representation, or commitment made to me in connection with my enlistment is written below in my own handwriting, or is hereby waived. (If none, write 'None.')

X None. [The word "none" is in plaintiff's handwriting.]

The plaintiff competed basic combat training (BCT) at Fort Leonard Wood, Missouri, and was assigned to the 1st Infantry Division, Ft. Riley, Kansas, where he reported for duty on May 11, 1974, for on-the-job training (OJT) in mechanical maintenance in accordance with the provisions of his enlistment documents. He was assigned to the 1st Infantry Division as he had requested, and on May 20, 1974, while engaged in combat maneuvers with his unit, he was run over by a tank, resulting in the amputation of the lower half of his body from the navel down. He is totally and permanently disabled and has been drawing total disability compensation as provided by law in Grade PV2 since May 29, 1974.

The plaintiff filed this suit seeking damages in the sum of $5,000,000 for his injuries. He alleges that the recruiting officer represented to him that he would be allowed to attend an automotive mechanical maintenance school of the 1st Infantry Division at Ft. Riley, Kansas, and that he would not be required to participate in any dangerous combat-type military maneuvers or activities. He alleges further that such representations formed a part of his enlistment contract and that the Army breached the contract when plaintiff was required to participate in the tank combat-type maneuvers of the 1st Infantry Division and that because of such breach he was injured and is entitled to damages.

The case is before us on defendant's motion to dismiss the plaintiff's petition. The defendant says that although the plaintiff has couched his suit in terms of a contract action, his claim sounds in tort over which this court has no jurisdiction. The defendant denies that the recruiting officer made the representations claimed by the plaintiff that the plaintiff would not be required to participate in any dangerous-combat-type

maneuvers or activities, and that, if any such representations were made by the recruiting officer, they were made orally and without authority; and that such representations, if they were made, contradicted the written enlistment documents which contained no such provisions, and conflicted with Army Regulations, and, for all of such reasons, were null and void.

In our prior opinion, we held that the plaintiff's case sounds in tort and not in contract and that we have no jurisdiction of his case because of 28 U.S.C. § 1491. We granted defendant's motion to dismiss and accordingly dismissed plaintiff's petition. At the time we entered our judgment of dismissal we were unaware that the plaintiff had finished his basic combat training and were of the opinion he was engaged in basic combat training at the time of his injuries, and we so stated in our opinion. The plaintiff applied to the Supreme Court for a writ of certiorari and during the proceedings there the government admitted for the first time that plaintiff had finished his basic combat training prior to the time of his injuries. In view of this fact the Solicitor General recommended to the Supreme Court in his brief that the case be sent back to this court so that we could interpret the language contained in DA Form 3286–47–R, Part VI, Sec. I, Paragraph 1(c) providing that "upon completion of BCT (basic combat training), I will undergo AIT [advanced individual training] in military occupational specialty  *  *  *  Mechanical Maintenance  *  *  *" The Supreme Court granted the writ of certiorari and vacated our previous judgment and remanded the case to our court for "further consideration in light of the position presently asserted by the Solicitor General in his brief  *  *  *."

We have carefully reconsidered the case in light of the position asserted by the Solicitor General in his brief aforesaid and have concluded that under the facts in this case it is immaterial that the plaintiff had finished his basic combat training at the time of his injuries. We have further concluded that the plaintiff is not entitled to recover for the reasons set forth below.

*I. Interpretation of the Language in DA Form 3286–47–R, Part VI, Section I, Paragraph 1(c).*

We have carefully examined the language in the above form that provides "Upon completion of basic combat training I will undergo advanced individual training in military occupational speciality  *  *  * mechanical maintenance," and have concluded from our interpretation of these provisions, when applied to the facts, that this language is of no help to the plaintiff. This is so because the facts show that when the plaintiff reported to the 1st Infantry Division at Ft. Riley, Kansas, on May 11, 1974, he was immediately assigned to that division for on-the-job training in mechanical maintenance in accordance with his enlistment documents, and he was so engaged when he was injured on May 20, 1974. The facts show further that the 1st Infantry Division was not composed entirely of foot soldiers, but possessed tanks. The advanced individual training (AIT) in the military occupational specialty (MOS) of mechanical maintenance 63A10 required the plaintiff to undergo training in the maintenance and repair of mechanical vehicles of every type, including tanks, under all conditions and circumstances whether in garages or on the battle field in combat situations. Army Regulation 350–1 (Oct. 1973) defined on-the-job training (OJT) which the plaintiff selected, as:

> Individual training [AIT] that a soldier receives in a unit when formal training is not available in USATCs and schools. OJT is presented for the award of an initial MOS only as an alternative to training in USATCs and schools.

The MOS for which plaintiff enlisted, mechanical maintenance helper, was an MOS described in Army Regulation 350–1, FORSCOM Supp. 1, ANXM as an MOS:

> For which no formal training currently exists within the U. S. Army Training Centers and Schools and for which AIT/OJT in Units is the only means of Initial MOS training.

Since there were no army schools where the plaintiff could be trained as a MOS63A10, Mechanical Maintenance Helper, the only way he could be trained in that specialty was by on-the-job training (OJT) with an active unit of the Army, which was the method chosen by the plaintiff in his enlistment documents.

The abbreviation SUE in the enlistment agreement signed by the plaintiff means "special unit enlistment" and is defined in Army Regulation, Forces Command (FORSCOM) Supp. 1 to AR 350–1 Annex M, § 2C (Nov. 28, 1973) as:

> An enlistment whereby an individual enlists for a specific unit and training in a specific combat support/combat service support MOS.

The foregoing Army Regulations also provided that individual training through on-the-job training (AIT/OJT) would be trained in their specialty for a period of 13 weeks; that commanders were given maximum flexibility in developing MOS training objectives and were authorized to deviate from Army Subject Schedules as required to meet local conditions.

Such enlistees were also required by the Regulations to participate in combat-type maneuvers with their units so that unit readiness could be maintained and vehicles, including tanks, could be kept in repair and battle-ready. Field training of this type was necessary for mechanical maintenance trainees so that they would be familiar with the mechanical and repair problems of tanks in combat situations. This was the practice followed by plaintiff's unit at Ft. Riley, Kansas, and all mechanical maintenance trainees, including the plaintiff, received such field training. At times, mechanics were assigned to duty stations aboard tanks to train and instruct them in keeping the vehicles repaired and operational in the field in combat-type situations and maneuvers. This combat-type training for maintenance mechanics is authorized by the foregoing and following Army Regulations:

> *Training in combat units will include combat support and combat service support functions* essential to mission accomplishment. *Combat support and combat service support units will be trained in the fundamentals of combat* to insure their capability to defend themselves and assume a combat role if required. (Emphasis supplied.)

\*     \*     \*     \*     \*     \*

The conduct of AIT/OJT is not intended to detract from or interfere with the mission of attaining and maintaining unit training readiness and/or performance of operational missions. *It is the intent of this program that OJT be conducted concurrent with unit training and mission requirements.* (Emphasis supplied.)

It is well settled that Regulations of an Executive Department have the force and effect of law. *See* 2 Am.Jur.2d *Administrative Law* § 292; *Paul v. United States,* 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); *Tasker v. United States,* 178 Ct.Cl. 56 (1967); *Rehart v. Clark,* 448 F.2d 170 (9th Cir. 1971); and *Maryland Casualty Co. v. United States,* 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297 (1920). The law in effect when a Government contract is made becomes a part of the contract. *See Caola v. United States,* 404 F.Supp. 1101, 1106 (D.Conn.1975) where the court held:

> Where as here, a contract is made between an individual and the government, the law in effect at the time the agreement is entered into becomes part of the contract. *Federal Crop. Ins. Corp. v. Merrill,* 332 U.S. 380, 384–385, 68 S.Ct. 1, 92 L.Ed. 10 (1947). \* \* \*

Consequently, these Regulations were a part of the plaintiff's enlistment contract and required him to be trained in the fundamentals of combat concurrent with the training of his combat-ready unit and as a part of his on-the-job training (OJT) as a mechanical maintenance helper (MOS 63A10).

The plaintiff claims that by assigning him immediately after BCT to a unit that performed combat-type maneuvers the Government committed error and violated the terms of his enlistment. There was no error. In fact, an analysis of the program

for which plaintiff enlisted shows that on the date of his injuries, plaintiff was exactly where the terms of his enlistment mandated that he should be and was performing the duties that the terms of his enlistment required of him. The program for which plaintiff enlisted consisted of mechanical maintenance training to be received while on the job with a combat-ready unit and required that he participate with that unit in combat-type activities.

Accordingly, we hold that immediately after basic combat training plaintiff was assigned to the program for which he enlisted, and at the time of his injuries he was performing the duties required of him by that program, and that the Army did not breach the plaintiff's enlistment agreement by such assignment.

*II. Even If Plaintiff Had Not Been Assigned To Training In His Chosen MOS Immediately After BCT, There Would Have Been No Violation Of The Terms Of Plaintiff's Enlistment.*

■ Under the terms of plaintiff's enlistment, there was no requirement that plaintiff receive his MOS training *immediately* after BCT. A review of all enlistment documents shows that the only reference to the timing of plaintiff's training appears on DA Form 3286–47–R which states at § I.1c:

> Upon completion of BCT, I will undergo AIT in military occupational specialty *MOS (OJT) 63A10 Mechanical Maintenance.*

Thus, the only requirement was that plaintiff receive MOS training after, rather than before, basic training. Since MOS training was only a 13-week program, it was quite possible to assign plaintiff to a number of post-BCT duty stations within a 3-year enlistment and still have time to train him in an MOS.

Plaintiff cannot be heard to say that he was orally or otherwise promised that his MOS training would occur immediately after BCT. On both DA Form 3286–47–R and DA Form 3286–32–R, plaintiff attested to the fact that all promises made to him were contained in his enlistment documents,

and nowhere in those papers was plaintiff made such a promise. Moreover, paragraph f of DA Form 3286, *supra,* put plaintiff on notice that he was not being guaranteed that a substantial part of his enlistment would be spent serving within his MOS option. In fact, it provided that "the needs of the service may result in my transfer * * * at any time to any other assignment within the continental United States or to an overseas command." Certainly there is nothing in the enlistment documents which shows that the parties considered the timing of plaintiff's training to be critical.

In a case very similar to the one now before the court, *Bemis v. Whalen,* 341 F.Supp. 1289 (S.D.Cal.1972), an enlisted man sought a writ of habeas corpus alleging breach of an enlistment agreement. In spite of the fact that the enlistee's enlistment papers showed that he was promised MOS training in electronics, through an oversight by the Marine Corps, he was not assigned to that MOS until approximately 15 months after his enlistment. During the interim he had been receiving other related training. The court found that since he would eventually receive the training he asked for and since he had been receiving valuable training during 15 months of his enlistment, he was not denied the benefit of his bargain. With respect to the MOS training, the court held that time was not of the essence and there had been no material breach of the contract.

Thus, in the instant case, even if plaintiff had not been assigned to the specialty he requested immediately after BCT (and the facts show that he *was* so assigned), defendant would not have breached the terms of the enlistment agreement, as there was plenty of time left during his 3-year term of enlistment for him to have been assigned to his chosen specialty of mechanical maintenance helper for a period of 13 weeks.

*III. The Alleged Oral Representations Of The Recruiting Officer And The Enlistment Documents Signed By the Plaintiff.*

■ The plaintiff stated in his own handwriting on January 24, 1974, and again on

February 25, 1974, in his enlistment documents, that no promises had been made to him in connection with his enlistment other than those contained in the enlistment papers he had signed. Furthermore, his statement asserted that any other promise, representation or commitment made to him in connection with his enlistment "is written below in my own handwriting, or is hereby waived." None were written on the statement. Instead, plaintiff wrote the word "none." Consequently, if the oral promises he now relies on were actually made to him, he expressly waived them.

The case of *Chalfant v. Laird,* 420 F.2d 945 (9th Cir. 1969) is directly in point. There the court held that an enlistee was bound by the Statement of Understanding that he signed in connection with his enlistment. There, as in the instant case, the enlistee signed Form D–44 and the "Statement of Understanding", which stated:

> "That my choice of initial assignment shown in items 13 or 37 of the DD Form 4 does not constitute any guarantee that my entire enlistment will be served in that initial assignment."

In Part II, under a section requiring the listing of any promises made to the enlistee, he set forth "Europe unassigned 4 years." He served 5 months in the United States, 2 years in Europe and was then ordered to Vietnam. He sued to enjoin the Army from sending him to Vietnam, saying that a recruiting officer had guaranteed to him that he would not be sent to Vietnam. The court denied relief, saying:

> Appellant had the capacity to read and understand the "Statement of Understanding" and in absence of fraud or imposition he is bound by its contents.

In the case before us, we likewise hold that the plaintiff is bound by the contents of the enlistment documents he signed.

The facts that no promise, representation, commitment, agreement or contract was made between the Army and the plaintiff in the enlistment documents in connection with his enlistment that provided that he would not be assigned to any dangerous-combative-type military maneuvers or func-tions during his service in the Army. It is clear that the documents, *supra,* executed by plaintiff upon entering active duty service in the Army, imposed no obligation on the United States to refrain from having plaintiff participate in a field training exercise, nor was there any prohibition from utilizing plaintiff in field training exercises. Notwithstanding plaintiff's positive statement in the enlistment documents that no promises or representations were made to him other than those in the written documents, he now claims that he was promised orally by the recruiting officer that he would not be assigned to dangerous or combat-type military duties. Such oral promises and representations, if they were made by the recruiting officer, are not binding on the government. In *Goldstein v. Clifford,* 290 F.Supp. 275 (D.N.J.1968), it was held:

> The enlistment instrument and the statutory law in effect when it was signed constitute the enlistment contract. *Home Building & Loan Association v. Blaisdell,* 290 U.S. 398, 435, 54 S.Ct. 231, 78 L.Ed. 413 (1934); *Brotherhood of Railway and Steamship Clerks, etc. v. Railway Express Agency, Incorporated,* 238 F.2d 181, 184 (6 Cir. 1956); *Morse v. Boswell, supra* [289 F.Supp. 812 (D.Md. 1968)] (290 F.Supp. 279).

See also *Pfile v. Corcoran,* 287 F.Supp. 554 (D.Colo.1968) where the court held that the executed enlistment documents of an enlistee constituted his enlistment contract. The court said:

> Commencing with the sentence "In connection with my enlistment as a Reserve of the Army for service in the Army Reserve, THIS DATE, I hereby agree to and understand that—," the Statement of Acknowledgment delineates the basic terms of petitioner's enlistment, laying out the duties and obligations of the enlisting reservist. The general physical appearance of the document would also reasonably lead one to conclude that it constituted the enlistment agreement. The attention of the Court has not been directed to any other document which could more reasonably be regarded as the enlistment contract.

\* \* \* The more specific and comprehensive language of the Statement of Acknowledgment, as well as the comparative physical appearance of the Statement and the oath, make it far more reasonable to conclude, and to rely on such conclusion, that the specific, detailed Statement of Acknowledgment constituted the enlistment contract, rather than the brief, more general oath. *We hold, therefore, that to the extent that petitioner's enlistment is governed by contract terms, the Statement of Acknowledgment constituted that contract.* (287 F.Supp. 557) (Emphasis supplied.)

In our opinion, 10 U.S.C. § 505 requires written instruments for an enlistment. Otherwise, there would be no way the government could determine which branch of the service was involved nor the term or conditions of the enlistment.

We hold that the written enlistment documents signed by the plaintiff and all statutes and Army Regulations in force constituted his enlistment contract.

█ Even if the Army recruiter made the alleged oral promises to the plaintiff, which defendant denies, they would not be valid in the absence of proof that the recruiter had the actual authority to make them. *Housing Corporation of America v. United States,* 468 F.2d 922, 199 Ct.Cl. 705 (1972); *Operational Manuals, Inc. v. United States,* 205 Ct.Cl. 854 (1974). One who purports to contract with the United States assumes the risk that the official with whom he deals is clothed with the actual authority to enter the contract alleged. *Federal Crop. Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Haight v. United States,* 209 Ct.Cl. 698, *cert. denied,* 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976). Moreover, the United States is not estopped to deny the authority of its agents. *California-Pacific Util. Co. v. United States,* 194 Ct.Cl. 703, 720 (1971);

*Putnam Mills Corp. v. United States,* 479 F.2d 1334, 202 Ct.Cl. 1 (1973). The plaintiff has not proven that the recruiter had actual authority to make the alleged oral promises or representations, if he did in fact make them.[2] It is well settled that the United States is not bound by its agents acting beyond their authority and contrary to regulation. *Federal Crop Ins. Corp. v. Merrill, supra; Porter v. United States,* 496 F.2d 583, 204 Ct.Cl. 355 (1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975); *Operational Manuals, Inc. v. United States, supra.*

█ It is well settled that an agent of the Government does not have the authority to make a promise, representation, or agreement that is contrary to the regulations of an Executive Department of the United States. This was clearly the holding of the Supreme Court in the *Merrill* case, *supra,* which is especially applicable here. There the plaintiffs were wheat farmers and applied to the agent of the Federal Crop Insurance Corporation, an agency of the Department of Agriculture, to insure their wheat crop planted on reseeded winter wheat acreage against drought. The agent represented to the plaintiffs that their crop was insurable, the application was accepted, the premium was paid, and the insurance was issued. Later, the crop was destroyed by drought. When the plaintiffs sought to collect the insurance the agency refused to pay on the ground that the Wheat Crop Regulation of the Department of Agriculture prohibited the insurance of wheat on reseeded acreage. This was unknown to the plaintiffs and to the government agent when the insurance agreement was made. The question in the case was whether or not the Government was liable to pay the loss because of the representations of the agent. The Supreme Court held that it was not liable, saying:

---

**2.** The plaintiff says that the recruiter had the apparent authority to make the representations. That is not enough. It is well established that the Government is not bound by the acts of an agent who only has apparent authority. *Jascourt v. United States,* 207 Ct.Cl. 955,

*cert. denied,* 423 U.S. 1032, 96 S.Ct. 562, 46 L.Ed.2d 405 (1975); *Bornstein v. United States,* 345 F.2d 558, 562, 170 Ct.Cl. 576, 582 (1965); and *United States v. Willis,* 164 F.2d 453, 455 (4th Cir. 1947).

* * * Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. See, e g., *Utah Power & L. Co. v. United States,* 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791, 818; *United States v. Stewart,* 311 U.S. 60, 70, [61 S.Ct. 102, 108] 85 L.Ed. 40, 48, and see, generally, Floyd Acceptances [*Pierce v. United States*] 7 Wall. 666, 19 L.Ed. 169.

If the Federal Crop Insurance Act had by explicit language prohibited the insurance of spring wheat which is reseeded on winter wheat acreage, the ignorance of such a restriction, either by the respondents or the Corporation's agent, would be immaterial and recovery could not be had against the Corporation for loss of such reseeded wheat. Congress could hardly define the multitudinous details appropriate for the business of crop insurance when the Government entered it. Inevitably 'the terms and conditions' upon which valid governmental insurance can be had must be defined by the agency acting for the Government. And so Congress has legislated in this instance, as in modern regulatory enactments it so often does, by conferring the rulemaking power upon the agency created for carrying out its policy. See § 516(b), 52 Stat. 72, 77 [c 30], 7 U.S.C.A. § 1516(b), [2 FCA title] 7, § 1516(b). Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents. [July 26, 1935] 49 Stat. 502, 44 U.S.C. § 307. [9A FCA title 44, § 307.]

Accordingly, the Wheat Crop Insurance Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance. * * * 332 U.S. 384–385, 68 S.Ct. 3, 92 L.Ed. 10, 15 (1947).

In the *Merrill* case, the oral representations and promises of the Government agent were contrary to the Regulations, and, therefore, invalid. In like manner, in our case, the oral representations and promises of the recruiting officer, if they were made, were contrary to the Army Regulations and were null and void and formed no part of plaintiff's enlistment agreement.

On the record, the court is required to conclude that the recruiter did not make the alleged promises and representations, or, if he did make them, he had no authority to do so. In either case, the plaintiff has no claim for damages for breach of contract and there remains no triable issue of fact.

In addition to the foregoing findings and conclusions, we wish to point out that no case has been cited to us and we have found none where a soldier has been awarded money damages for injuries received during military service on the theory that there had been a breach of his enlistment contract. In fact, with the exception of suits for pay, which are governed by statute, we know of no case where a court has awarded a soldier money damages for breach of his enlistment contract. The Congress has provided a comprehensive statutory system of compensation for injuries to servicemen, and the plaintiff is receiving total disability payments under that plan. The Supreme Court has held that in establishing this system the Congress has limited the liability of the Government for service-connected injuries where the soldier sues in tort for money damages. See *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); and *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), where the court held:

A compensation scheme such as the Veterans' Benefits Act serves a dual pur-

pose: it not only provides a swift, efficient remedy for the injured serviceman, but it also clothes the Government in the "protective mantle of the Act's limitation-of-liability provisions." See *Cooper Stevedoring Co. v. Kopke, Inc.,* 417 U.S. 106, 115, [94 S.Ct. 2174, 2179, 40 L.Ed.2d 694] (1974). Given the broad exposure of the Government, and the great variability in the potentially applicable tort law, see *Feres,* 340 U.S., at 142–143, [71 S.Ct. 153, at 157], *the military compensation scheme provides an upper limit of liability for the Government as to service-connected injuries.* To permit petitioner's claim would circumvent this limitation, thereby frustrating one of the essential features of the Veterans' Benefits Act. As we stated in a somewhat different context concerning the Tort Claims Act: "To permit [petitioner] to proceed * * * here would be to judicially admit at the back door that which has been legislatively turned away at the front door. We do not believe that the [Federal Tort Claims] Act permits such a result." *Laird v. Nelms,* 406 U.S. 797, 802, [92 S.Ct. 1899, 1902, 32 L.Ed.2d 499] (1972). (431 U.S. 673, 97 S.Ct. 2059) (Emphasis supplied).

██ Since a soldier cannot circumvent the compensation system by suing in tort for additional money damages for injuries, there is no logical reason to allow him to circumvent the congressionally mandated limitations in a suit that he characterizes as one for breach of contract, which is the case here.

*IV. To Recover Damages For Personal Injuries, The Plaintiff Sues In Contract, But His Claim Sounds In Tort.*

██ In view of the shocking severity of the plaintiff's injuries, the court has made a thorough and painstaking review of the facts of this case to make sure that the plaintiff receives every consideration to which he is entitled under the law. After such careful and diligent review, we conclude that we are required to hold that although plaintiff attempts to cast his complaint in terms of breach of an enlistment contract, the action sounds in tort. This court, pursuant to 28 U.S.C. § 1491, has no original tort jurisdiction. *Martilla v. United States,* 118 Ct.Cl. 177 (1950); *Eastport Steamship Corp. v. United States,* 372 F.2d 1002, 178 Ct.Cl. 599 (1967); *Clark v. United States,* 461 F.2d 781, 198 Ct.Cl. 593, *cert. denied,* 409 U.S. 1028, 93 S.Ct. 465, 34 L.Ed.2d 322 (1972); *Bibbs v. United States,* 206 Ct.Cl. 896, *cert. denied,* 423 U.S. 985, 96 S.Ct. 393, 46 L.Ed.2d 302 (1975).

In *McCreery v. United States,* 161 Ct.Cl. 484, 487–88 (1963), this court stated:

The claim here is based on misrepresentation by the defendant's officers which the plaintiff relied on to his detriment. The claim thus sounds in tort. *Restatement of Torts* (1938) § 532; Prosser *Torts* (1941 ed.) § 87. See also *United States v. Neustadt,* 366 U.S. 696, 706, fn. 16 [81 S.Ct. 1294, 6 L.Ed.2d 614] (1961). Repeatedly it has been held that under the Tucker Act (28 U.S.C. § 1491), which defines the general trial jurisdiction of this court, this court lacks jurisdiction over a case sounding in tort regardless of how vicious or malicious the tort may be. * * * [Footnote omitted]

The plaintiff does not sue for a recovery based on a breach of the written enlistment contract that he signed, nor could he do so successfully, because he does not allege that the enlistment documents were breached. Furthermore, we have found and concluded in the foregoing sections of this opinion that the Army did not breach the enlistment agreement created by the documents the plaintiff signed. Therefore, the plaintiff is in the position of having to claim that his suit is based on a contract created by the alleged oral representations and promises of the recruiting officer. We have found and concluded that the recruiting officer did not make such representations, and even if he did, he was without authority to make them, and that they were contrary to the Army Regulations and were null and void. We have held further that such oral representations, if they were made, formed no part of the enlistment contract. Under these circumstances, it is

clear that if the plaintiff has any claim it sounds in tort.

In *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) three cases were considered in one opinion. In one case a soldier's executrix sued the Government to recover for his death due to negligence of the Army in quartering him in unsafe barracks which were destroyed by fire. The other two cases involved suits by a soldier and by the executrix of another for injuries to the one and death to the other due to negligent medical treatment while on active duty. The Supreme Court denied recovery, saying:

> * * * We know of no American law which ever has permitted a soldier to recover for *negligence,* against either his superior officers or the Government he is serving. * * * (340 U.S. 141, 71 S.Ct. 157) (Emphasis supplied). (Footnote omitted.)

> * * * * * *

We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service. * * * [340 U.S. at 146, 71 S.Ct. at 159].

It is clear that if plaintiff's claim were asserted against a private party, it would be a tort claim. It is no less so where, as here, the Government is the party against whom the claim is asserted. See *Eastport Steamship Corp. v. United States, supra,* where we said:

> * * * Whatever the characterization, the gravamen of the cause of action, under normal legal theory, would be tortious as between private parties. We must apply the same standards. The whole history of federal consent-to-sue on tort claims, as well as the structure of the Tort Claims Act (especially the exceptions (28 U.S.C. § 2680(a)–(n)), demonstrates that Congress has thought of cases 'sounding in tort' as those which would be tort-grounded as between private persons. [372 F.2d at 1013, 178 Ct.Cl. at 614.]

In *Bibbs v. United States, supra,* the plaintiffs were the parents of a deceased minor soldier. They alleged that the Army promised them and their son orally that if the plaintiffs consented to his enlistment the Army would not assign him to a combat zone or to combat duties until he reached 18 years of age. After the son enlisted under this oral agreement he was sent to Vietnam and assigned to combat duties in a helicopter which was shot down and he was killed. The parents sued in contract for damages claiming the Army had breached the agreement. In that case, upon considering defendant's motion to dismiss the plaintiffs' petition, we held:

> * * * [T]he court concludes that the motion should be granted because the action though pleaded in a contract form is an action sounding in tort over which this court has no jurisdiction under 28 U.S.C. § 1491 (1970); *Martilla v. United States,* 118 Ct.Cl. 177 (1950); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967); *Clark v. United States,* 198 Ct.Cl. 593, 461 F.2d 781, *cert. denied,* 409 U.S. 1028 [93 S.Ct. 465, 34 L.Ed.2d 322] (1972); and on the basis thereof,

> IT IS ORDERED that defendant's motion to dismiss is hereby granted and that plaintiffs' petition be and the same is hereby dismissed. [206 Ct.Cl. at 897.]

The *Bibbs* case is practically identical to the instant case on the law and the facts and controls our decision here.

## V. Conclusion

We hold that the plaintiff's case sounds in tort and not in contract, and that we do not have jurisdiction of his case.

Accordingly, defendant's motion to dismiss is granted and the plaintiff's petition is dismissed.