**Mary Helen HARRIS, Petitioner,**

v.

**Secretary of Defense Harold BROWN, Major General Wesley Peel, Fort Leonard Wood, Missouri, Respondents.**

No. 79–3096–CV–S.

United States District Court,
W. D. Missouri, S. D.

May 22, 1979.

Lincoln J. Knauer, Jr., of Farrington, Curtis, Knauer, Hart & Garrison, Springfield, Mo., for petitioner.

Judith M. Strong, Asst. U. S. Atty., Kansas City, Mo., Levator Norsworthy, Jr., Washington, D. C., for respondents.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

COLLINSON, District Judge.

The following facts were developed during an evidentiary hearing, which was held at the United States Courthouse, Springfield, Missouri, on May 3, 1979. On June 11, 1974, petitioner, whose name is now Mrs. Mary Helen Harris, accepted a reserve commission in the United States Army and agreed to participate in the Armed Forces Health Professions Scholarship Program (hereinafter HPSP). This program, which was created by Congress at 10 U.S.C. § 2120 et seq. (1976), provides for scholarship assistance for medical students in exchange for one year of active duty for each year

that the student receives scholarship assistance. At the time Mrs. Harris was recruited for the HPSP program and accepted her reserve commission, AR635–120 provided, in pertinent part, that:

7–1 . . . a. When it has been determined that a female officer is pregnant or has given birth to a living child during the period of her present appointment she will be afforded an opportunity to—

(1) Tender a resignation under the provisions of this chapter; or

. . . . .

b. If pregnancy is the only medical condition which is disqualifying for retention in the service, the resignation will be accepted without processing by a medical board or physical evaluation board . .

c. If the officer does not choose to resign, or requests retirement or relief from active duty if eligible, and a waiver of retention on active duty is not granted, she will be discharged from the regular Army or the Army of the United States, or the U.S. Army Reserve, whichever is applicable.

. . . . .

In addition, AR635–120, Sec. 7–6, provided that an officer who resigned or was discharged for the sole reason of pregnancy was to be issued an honorable discharge certificate regardless of marital status, unless other factors warranted another type of discharge.

On January 14, 1975, however, AR635–120 was amended as follows:

7–2. Funded commissioning programs. a. Officers who received commissions through funded programs, including AMEDD programs and ROTC scholarship programs, may not tender a resignation solely for pregnancy or birth to a living child until completion of initial service obligation.

During July, 1977, while serving on active duty at Fort Leonard Wood, Missouri, Mrs. Harris gave birth to a live, healthy child. In June 1978, Mrs. Harris again discovered that she was pregnant and, in February, 1979, gave birth to a second live, healthy child. On January 17, 1979, Mrs. Harris submitted a formal resignation and a letter confirming her second pregnancy to the Department of the Army.

On March 3, 1979, Mrs. Harris's commanding officer informed her that her resignation had been rejected by the Department of the Army and that she would, therefore, be required to serve the remainder of her military obligation.

On April 10, 1979, Mrs. Harris filed an application for a writ of habeas corpus, requesting her immediate discharge from the United States Army. In her application, Mrs. Harris argues that, since she has given birth to a live child, paragraph 7–1(a) of AR635–120 entitles her to an automatic honorable discharge. On April 10, 1979, this Court directed respondents herein to show cause why the writ requested should not issue. Respondents filed a return to the show cause order, an evidentiary hearing was held, and the parties have now briefed their respective positions.

■ Mrs. Harris's petition does not allege any jurisdictional basis for this action, but the remedy requested by her is clearly within the power granted to this Court by 28 U.S.C. § 2241 (1976). *Parisi v. Davidson,* 405 U.S. 34, 39, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). In addition, there is no procedural bar to the exercise of this Court's jurisdiction since Mrs. Harris alleges, and the United States does not contest, that she has exhausted her available administrative remedies.

■ Respondents advance two separate arguments in opposition to Mrs. Harris's request to be discharged. First, they argue that the January 1975 amendment to AR635–120, which clearly eliminates pregnancy or birth of a live child as a basis for resignation by an officer who participated in a funded program (like HPSP) applies to officers who enlisted *prior* to that amendment. This Court finds that argument without merit. In *Jackson v. United States,* 573 F.2d 1189 (Ct.Cl.1978) (herein-

after *Jackson* ), the Court held that "the written enlistment documents signed by plaintiff and all statutes and Army Regulations *in force* constituted his enlistment contract." 573 F.2d at 1197 (emphasis added). Thus, under the *Jackson* holding, Mrs. Harris's enlistment contract consists of her enlistment documents and the statutes and regulations in effect *at the time of her enlistment. Jackson, supra* at 1197. Since the 1975 amendment to AR635–120 was not in effect at the time of Mrs. Harris's enlistment, it is not a part of her enlistment contract and, therefore, does not apply to her.

The second argument advanced by respondents is that paragraph 7–1(a) of AR635–120 does not, as Mrs. Harris contends, require the Army to automatically accept her resignation.

As discussed above, it is undisputed that AR635–120, at paragraph 7–1(a), provided that "If pregnancy is the only medical condition which is disqualifying for retention in the service, the resignation will be accepted without processing . . ." Respondents argue, however, that this *regulation*, which, on its face, supports Mrs. Harris's interpretation, must be read together with paragraphs 2–2(c) and 1–3(a) of AR635–120.

■ Those two paragraphs, respectively, provide that, "Resignations and requests for discharge . . . will be forwarded through normal administrative channels to Headquarters, Department of the Army." and that "Final decision[s] concerning acceptance of all resignations and for requests for discharge under this regulation will be made in Headquarters, Department of the Army." This Court is convinced that the regulations upon which respondents rely do not apply to resignations based upon pregnancy. Paragraphs 2–2(c) and 1–3(a) of AR635–120 apply generally to all resignations and discharges for any reason. Mrs. Harris argues, and this Court agrees, that the specific language of paragraph 7–1(a), that "resignation[s] [based upon pregnancy] will be accepted without processing . . ." provides an exception to the general rule, of paragraphs 2–2(c) and 1–3(a) of AR635–120,

that resignations and discharges must be approved by Headquarters, Department of the Army.

■ Mrs. Harris's argument, that AR635–120, as written at the time of her enlistment, entitled her to an automatic discharge if she became pregnant, draws strong support from two additional sources. First, in *United States v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977) (hereinafter *Larionoff* ), which involved interpretation of Department of Navy regulations, the Court stated, "In construing administrative regulations 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation' " 431 U.S. at 872, 97 S.Ct. at 2156. Thus, based upon *Larionoff,* the Army's own interpretation of AR635–120 must be given "controlling weight" unless it is plainly erroneous or inconsistent with the regulation.

■ At the hearing in this matter, respondents called a Major Sowders, who testified concerning the Army's interpretation of paragraph 7–1(a) of AR635–120. Major Sowders testified that the Army's interpretation of that regulation was that it entitled any female officer to an automatic discharge if she tendered her resignation after she became pregnant or gave birth to a live child. This Court finds no inconsistency between the Army's own interpretation of paragraph 7–1(a), as established by Major Sowders' testimony, and the plain language of that paragraph. Accordingly, this Court holds that AR635–120, as written at the time of Mrs. Harris's enlistment, entitled any female officer, including Mrs. Harris, to an automatic discharge if she became pregnant or gave birth to a live child and tendered her resignation.

This Court's holding is supported by the Army's 1975 amendment to AR635–120. In September, 1974, after Mrs. Harris's enlistment, the Department of the Army announced "Change 11," to AR635–120. In pertinent part, that change provided that,

Officers who receive commissions through funded programs, including AMEDD programs and ROTC scholarship programs, may not tender a resignation solely for pregnancy or birth to a living child until completion of initial service obligation.

Change 11 became an amendment to AR635–120 in January, 1975. The Army's designation of this policy as a "change," and the Army's statement in September, 1977 that:

Previous Army regulations concerning the pregnancy policy were changed due to the early loss of significant numbers of obligated individuals who had participated in funded programs but did not complete their period of obligated service due to the pregnancy.option. This created adverse personnel staffing situations.

Petitioner's Trial Memorandum, filed May 3, 1979, at 5, persuades this Court that Major Sowders' testimony concerning the Army's own interpretation of AR635–120 is correct, and that "change 11" was, in fact, a genuine change in policy and not a mere clarification of preexisting policy as the Army now argues.

Since this Court holds that AR635–120, as written at the time of Mrs. Harris's enlistment, entitled her to an automatic discharge if she became pregnant and tendered her resignation, and since that regulation was a part of Mrs. Harris's enlistment contract, *Jackson v. United States,* 573 F.2d 1189 (Ct.Cl.1978), the only question remaining is whether the Army's refusal to accept Mrs. Harris's resignation entitles her to the relief she seeks. If this Court finds the Army's failure to accept Mrs. Harris's resignation to be a material breach of her enlistment contract, then Mrs. Harris will be entitled to immediate discharge from the Army. *Bemis v. Whalen,* 341 F.Supp. 1289, 1291 (S.D.Cal.1972).

At the hearing in this matter Mrs. Harris testified that the option provided by paragraph 7–1(a) of AR635–120 was an important benefit that she considered in her decision to accept employment from the Army. Mrs. Harris's husband also testified that, in deciding to enlist in the Army, Mrs. Harris gave considerable weight to her belief that, if she became pregnant, she would be able to resign her commission and stay home to raise her child. The Army did not contradict this testimony in any way.

Based upon the Harris' testimony at the hearing, this Court finds that the Army's refusal to accept Mrs. Harris's resignation and to thereby discharge her from the Army deprived Mrs. Harris of what was to her an important benefit of her bargain with the Army. *Bemis v. Whalen,* 341 F.Supp. 1289, 1292 (S.D.Cal.1972). Accordingly, this Court holds that the Army committed a material breach of Mrs. Harris's enlistment contract when it refused to accept her resignation.

In so holding, this Court is not unmindful of the Army's legitimate concern over limitations on its ability to modify its regulations. *But cf., United States v. Larionoff,* 431 U.S. 864, 879, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). This Court's holding is, therefore, limited to situations where the retroactive application of a change in regulations deprives an enlistee of an important benefit of his or her enlistment contract. *Bemis v. Whalen,* 341 F.Supp. 1289, 1292 (S.D.Cal.1972).

For the reasons set forth above, it is

ORDERED that Mrs. Harris's application for a writ of habeas corpus be, and hereby is, granted; and it is

ORDERED that, within 5 days of the date of this Order, respondents release Mrs. Harris from the custody of the United States Army by awarding her a certificate of honorable discharge.