The plaintiff, acting pro se, seeks to redress what he perceives as various wrongs committed by the government in connection with, and subsequent to, his discharge from the United States Naval Reserve as a result of psychological problems. His petition seeks damages of approximately $24,000 representing the additional pay he would have received during the balance of his enlistment term had he not been discharged, approximately $91,000 in pay he alleges he would have received upon reenlistment, and $945 representing three months’ housing allowance paid to his estranged wife allegedly contrary to his wishes. In subsequent papers filed with us, however, the plaintiff increased his requested damages first to $7 million and then to $7 billion. He also proposes some bizarre relief.[1]
*834 The defendant has moved for summary judgment dismissing the complaint. We grant the motion except with respect to the claim for the housing allowance paid to his estranged wife.[2]
In June 1974 the plaintiff enlisted in the United States Naval Reserve for six years. In January 1976 he was convicted by special court-martial of disrespect and contempt toward a superior petty officer. The punishment was forfeiture of $90 pay, reduction in grade, and restriction to the base for 60 days. The plaintiff then requested the Navy to investigate alleged misconduct by his superior officers. Following the investigation, the investigating officer recommended that the plaintiff be given a psychological examination to determine his suitability to remain in the Navy.
As a result of an extensive examination, the plaintiff was diagnosed as a paranoid personality "manifest by unwarranted suspicion, extensive self-importance, and a tendency to blame others and ascribe evil motives to them.” He was found unsuitable for further military service and, in May 1976, he was given an honorable discharge for unsuitability.
Although the precise nature of the plaintiffs complaints is difficult to fathom, they may be described as follows:
(1) that the court-martial was illegally composed and illegally convened and therefore without jurisdiction to try him;
(2) that as a result of his being forced to submit to an inadequate psychiatric examination and the "[failure of the doctors or staff to correct factual errors in [his] medical records and refusal to investigate the veracity of plaintiffs claims,” the plaintiff was improperly dismissed from the military; and
(3) that the plaintiffs estranged wife improperly received his housing allowance.
*835 1. Our limited jurisdiction to review a court-martial exists only when a claim for damages is asserted based upon the action of that tribunal. We have no authority to consider the validity of a court-martial apart from such a claim for damages. Since the plaintiff apparently is not seeking damages growing out of his court-martial — he does not seek recovery of the pay he forfeited or the loss of pay resulting from his reduction in grade — it would appear that we have no jurisdiction to review the court-martial.
Perhaps the plaintiff is contending that the court-martial triggered his subsequent discharge from the service and that we can review the court-martial in connection with deciding his claim for lost pay resulting from the discharge. Assuming, arguendo, that this would be a sufficient nexus to authorize us to review the court-martial, we still cannot do so because of the plaintiffs failure to exhaust the administrative remedies by which he could have challenged the court-martial.
Following his conviction, the plaintiff could have sought review of the court-martial by the Judge Advocate General, who could have given him all the relief he now seeks regarding that conviction. His failure to invoke that remedy bars him from presenting that claim here. Artis v. United States, 205 Ct. Cl. 732, 736-37, 506 F.2d 1387, 1388-89 (1974).
2. Although the plaintiff views his pay claims as based upon the Navy’s alleged breach of his enlistment contract, his claim actually is that the Navy violated his statutory right not to be illegally discharged. See United States v. Larionoff, 431 U.S. 864, 869 (1977); Bell v. United States, 366 U.S. 393, 401-02 (1961); Jackson v. United States, 216 Ct. Cl. 25, 43-44, 573 F.2d 1189, 1198 (1978). To prevail, the plaintiff must show "by cogent and clearly convincing evidence that such determinations [his unfitness for duty] are arbitrary, capricious, or not supported by substantial evidence.” Winder v. United States, 227 Ct.Cl. 697 (1981); Rutherford v. United States, 216 Ct. Cl. 163, 168-69, 573 F.2d 1224, 1226-27 (1978); Finn v. United States, 212 Ct. Cl. 353, 356, 548 F.2d 340, 342 (1977). The plaintiff has not so shown.
*836 The psychiatrist’s report that recommended the plaintiffs discharge provided substantial evidence that plaintiff was unfit for military service. The examining psychiatrist’s evaluation was based upon interviews with the plaintiff, the plaintiffs medical records, neurological, laboratory and medical examinations, observations of the plaintiff in individual and group meetings, psychological consultations, and several psychological and intelligence tests.
The plaintiff has not provided any medical evidence to refute this finding. Instead, he merely states that the psychiatric examination was inadequate and that the doctors failed to correct factual errors in his records and refused to investigate the veracity of his claims. These bare assertions are insufficient to invalidate his discharge. See Winder v. United States, supra.
3. The plaintiff contends that the Navy paid a housing allowance (BAQ) to his estranged wife for June, July, and August, 1974, contrary to his wishes. The government’s motion for summary judgment on this claim is based upon a report of an informal investigation conducted by Captain Schollian of the Navy. The captain reported that the career counsellor at the plaintiffs post, Chief Prince, "called the Navy Finance Center at Cleveland to check on the BAQ difficulty and received telephone verification that the Finance Center had an official allotment request signed by Petty Officer Sweatt”; that "Chief Prince advised Sweatt to originate official correspondence to obtain a copy of the document to verify the signature”; and that "Petty Officer Sweatt never followed up the recommendation”. Captain Schollian reported that in his interview the plaintiff "stated he may have signed the authorization during his enlistment process without realizing it.”
This material does not justify granting summary judgment for the government. The government has not furnished either a copy of the allotment request that the plaintiff allegedly signed or an affidavit from Chief Prince. The triple hearsay upon which the government relies — the report by Captain Schollian that Chief Prince had been told on the telephone by someone at the Naval Finance Center that that office had the plaintiffs signed allotment request — is not sufficient to warrant dismissing this claim. *837 Although the plaintiffs statement to Captain Schollian that he "may” have signed the authorization provides some support for the government’s contention, it is not sufficient to establish that he did so, even in conjunction with Captain Schollian’s report.
We accordingly deny the defendant’s motion relating to this part of the case, without prejudice, however, to its renewal on the basis of additional material the defendant may submit.
CONCLUSION
The defendant’s motion for summary judgment is granted with respect to all claims other than the claim for the housing allowance, and the petition is dismissed to that extent. The motion for summary judgment is denied without prejudice with respect to the housing allowance claim. The case is remanded to the Trial Division for further proceedings on that claim in accordance with this order.

 For example, the plaintiff suggests that:
"* * * the court order Pierre Chardbutte, Thief of Naval Reserve, to personally carry *834 on foot from U.S. Marshall’s Office to U.S. Court of Claims [the complete personnel files of 16,277 parties discharged in a manner similar to plaintiff], escorted by U.S. Marshalls riding bicycles and carrying bullwhips, copies of the U.S. Constitution, and flags with rattlesnakes and the words 'Don’t thread on me’ emblazoned thereon, said U.S. Marshall paraphanelia provided at the expense of defendant.” [All sic.]

 Plaintiff has requested a hearing en banc. All of the active judges having voted against such hearing, the request is denied.