# United States Court of Appeals for the Federal Circuit

06-5048

NIGHT VISION CORP.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Stephen Novack, Novack and Macey LLP, of Chicago, Illinois, argued for plaintiff-appellant. On the brief was James S. DelSordo, Cohen Mohr LLP, of Washington, DC. Of counsel on the brief were P. Andrew Fleming and John F. Shonkwiler, Novack and Macey LLP, of Chicago, Illinois.

Kyle E. Chadwick, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, and David M. Cohen, Director. Of counsel was Mark A. Melnick, Assistant Director.

Jere W. Glover, Brand Law Group, P.C., of Washington, DC, for amici curiae. With him on the brief was Andrew D. Herman. Of counsel on the brief was Paul J. Seidman, Seidman & Associates, P.C., of Washington, DC.

Appealed from: United States Court of Federal Claims

Judge Lawrence J. Block

# United States Court of Appeals for the Federal Circuit

06-5048

NIGHT VISION CORP.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:   November 22,  2006

_____

Before MAYER, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and GAJARSA, <u>Circuit Judge</u>.

FRIEDMAN, <u>Senior Circuit Judge</u>.

A small business concern contends that it had a contractual commitment with the Air Force that, if it successfully completed the first two phases of a research and development contract, it would be awarded the contract for further development and ultimate production of the device it developed; and that the Air Force breached this commitment when it awarded the production contract to another company.  The Court of Federal Claims dismissed the breach-of-contract suit that the small business had filed, ruling that the Air Force had not made any such contractual commitment.  <u>Night Vision Corp. v. United States</u>, 68 Fed. Cl. 368 (2005).  We affirm.

I

Congress created the Small Business Innovation Research ("SBIR") program to assist small-business concerns in obtaining and performing research and development work. See 15 U.S.C. § 638(a)-(d). The program requires federal agencies to reserve some of their research and development funds for small businesses. See 15 U.S.C. § 638(e)(4). The SBIR program has three phases. Phase I involves "determining . . . the scientific and technical merit and feasibility of ideas that appear to have commercial potential." Id. § 638(e)(4)(A). Phase II is designed "to further develop proposals which meet particular program needs." Id. § 638(e)(4)(B). Phase III involves "commercial applications of SBIR-funded research and development" or "products or services intended for use by the Federal Government, by follow-on non-SBIR Federal funding awards" or "the continuation of research or research and development that has been competitively selected using peer review or scientific review criteria." Id. § 683(e)(4)(C). Funding for Phase III is provided by either "non-Federal sources of capital" or "non-SBIR Federal funding." Id.

A. The basic facts in this case, as found by the Court of Federal Claims, are largely undisputed. The Air Force awarded the appellant Night Vision Corporation ("Night Vision"), a small business concern, successive Phase I and Phase II contracts to develop improved "Panoramic Night Vision Goggles" ("Goggles"), which would have a broader field of view than existing Goggles.

After Night Vision successfully developed a prototype under the Phase I contract, it entered into a Phase II contract to produce twelve prototypes of the Goggles. Night

Vision, which had only three employees, hired Insight Technology, Inc. ("Insight"), which was not a small business, as a subcontractor to assist in performing the contract.

During Phase II, the Air Force indicated to Night Vision that it might receive a Phase III contract. Night Vision, 68 Fed. Cl. at 372. That possibility led to tensions between Night Vision and Insight, which demanded that Night Vision guarantee that Insight would be the Phase III subcontractor and would participate in production of Goggles following the completion of Phase III. Id. The Air Force ultimately mediated this dispute, after Insight stopped working on the project, thereby endangering the completion of the Phase II contract. Insight resumed performance of the subcontract and the Air Force continued to discuss with Night Vision the possibility of a Phase III contract. Id. at 372-73.

In the Spring of 1999, when performance of the Phase II contract was well under way, the Air Force began to investigate options other than a Phase III contract with Night Vision for producing the Goggles; including directly contracting with Insight. Id. at 373. On June 24, 1999, the Air Force first informed Night Vision that it was unlikely that it would be given a Phase III contract for the Goggles. Four days later, the Air Force officially announced it was considering a competitive procurement. Id.

Night Vision successfully completed the Phase II contract on July 30, 1999. On August 27, 1999, the Air Force told Night Vision at a meeting that it was considering whether to use a Phase III contract or hold a competitive procurement. Id. at 374-75. When Night Vision indicated its unwillingness to submit a Phase III proposal unless it was likely to result in a contract, the Air Force responded that no guarantees could be made. Id. at 375. At this meeting, the Air Force's contracting officer took notes that

reflected her belief that Night Vision had at some point been promised a Phase III contract, though she did not indicate when, or by whom, she believed this promise was made. Id. Night Vision never submitted a Phase III proposal.

In December 1999, the Air Force issued a Program Research and Development Announcement for Goggles, which initiated the competitive procurement process. Id. at 375-77. Three companies submitted bids: Night Vision, Insight, and Litton Systems, Inc. ("Litton"). The Air Force rated Insight first, Litton second, and Night Vision third, and awarded the contract to Insight.

B. Night Vision then filed a five-count complaint in the Court of Federal Claims. The court rejected all of those claims. We discuss only those claims that Night Vision pursues in this appeal.

The Court of Federal Claims dismissed, under its Rule 12(b)(6), for failure to state a valid claim for relief, Night Vision's claim that the Air Force had breached a written contract that if Night Vision successfully completed Phases I and II of the research and development contract, it would be awarded a Phase III production contract. Night Vision's theory was that the Air Force's contractual commitment was provided by a statutory provision that it contends was incorporated into the Phase I and Phase II contracts. The Court of Federal Claims rejected this argument "because the statute plaintiff seeks to incorporate into the contract . . . imposes no obligation or duty on either party to the contract." Id. at 371.

The court granted summary judgment for the United States on Night Vision's claims that the Air Force (1) had made the same commitment in an oral contract it had entered into with Night Vision, which the Air Force breached, and (2) had breached an

implied-in-fact contract with Night Vision containing that commitment. The court so ruled "because plaintiff has failed to produce evidence that a government representative with contracting authority made a contract with plaintiff." Id. at 371.

## II

A. The only written contracts relating to these arrangements between Night Vision and the Air Force apparently were the Phase I and Phase II agreements. As Night Vision indicates, neither of these documents contained any explicit commitment that if Night Vision successfully completed the first two phases, it would receive a Phase III contract.

Night Vision contends, however, that such a commitment was provided in a statutory provision which, it argues, the Phase I and Phase II contracts should be deemed to incorporate. It relies on the principle that "[t]he law in effect when a Government contract is made becomes a part of the contract." Jackson v. United States, 216 Ct. Cl. 25, 36 (1978). Whatever may be the meaning and scope of that principle in other situations, however, the statute that Night Vision invokes does not provide such a commitment.

That statute is 15 U.S.C. § 638(j), which is captioned "(j) Small Business Administration policy directives for the general conduct of small business innovation research programs," and provides in pertinent part:

> (1) Policy directives
>    The Small Business Administration . . . shall, within one hundred and twenty days of July 22, 1982, issue policy directives for the general conduct of the SBIR programs within the Federal Government, including providing for —
>
>    . . . .

(2) Modifications

Not later than 90 days after October 28, 1982, the Administrator shall modify the policy directives issued pursuant to this subsection to provide for —

. . . .

(C) procedures to ensure, to the extent practicable, that an agency which intends to pursue research, development, or production of a technology developed by a small business concern under an SBIR program enters into follow-on, non-SBIR funding agreements with the small business concern for such research, development, or production.

Finally, § 638(j)(3), directs that not more than 30 days after December 21, 2000, the administrator "shall modify the policy directives issued pursuant to this subsection" to meet various specified objectives.

The only specific requirement that § 638(j)(2)(C) imposes is that the Administrator "modify the policy directives issued pursuant to this subsection to provide for . . . (C) procedures to ensure, to the extent practicable, that an agency which intends to pursue . . . a technology developed by a small business concern under an SBIR program enters into follow-on, non-SBIR funding agreements with the small business concern for such research, development or production." The Administrator has done so. See SBIR Research Program Policy Directive, 67 Fed. Reg. 60,072, 60,075-076 (Sept. 24, 2002) (noting that the special acquisition preference given to SBIR awardees is "a preference and is not mandatory" and that "[i]t is clear that Congress intends, to the greatest extent practicable, that agencies issue Phase III awards to the SBIR awardees that developed the technology"); SBIR Research Program Policy Directive, 58 Fed. Reg. 42,607, 42,612 (Aug. 10, 1993) ("A Federal agency may enter into a third phase agreement with a small business concern for additional work to be performed during or

after the second phase period. . . . Agencies which intend to pursue research, research and development or production of a technology developed by a small business concern under the STTR [Small Business Technology Transfer] Program will give special acquisition preference . . . to the STTR company which developed the technology").

The statutory provision thus deals with modification of "policy directives" to "provide for . . . procedures" to "ensure to the extent practicable" the accomplishment of the statutory policy that Phase III, "follow-on" contracts should be awarded to small business concerns that have successfully completed Phase I and Phase II projects.

Night Vision would interpret this provision as requiring that the objective stated in sub-paragraph (C) be made a mandatory provision of every Phase I and Phase II contract. In effect, it would read into every such contract the requirement that if a contractor successfully completes Phase I and Phase II, the government must adopt Phase III as the way to perform the production phase of the project and award the Phase III contract to the small business concern involved.

Night Vision's interpretation is not supported by, and is inconsistent with, the language and meaning of § 638(j)(2)(C), which does not impose such a requirement on the government. Indeed, that provision deals with "procedures" to accomplish the stated objective; it does not mandate particular action to achieve those results.

Night Vision's position would seriously limit the government's ability to select the form of procurement that it considers most appropriate in the particular situation. Once the prototypes have been successfully completed in the Phase I and Phase II contracts and the government has determined to go ahead with the acquisition of the prototyped product, it is within the government's discretion to select the particular form the

procurement will take. It could be a Phase III contract, which the statute favors, but does not require, awarded to the small business concern that performed the Phase I and II contracts. It could be a negotiated contract with a particular supplier. Or, as was done in this case, it could be a competitively-let contract. Cf. SBIR Research Program Policy Directive, 67 Fed. Reg. at 60,075 (discussing agencies' alternatives to awarding Phase III contracts and stating that "agencies are required to report only those instances where a follow-on award with non-SBIR funds was issued to a concern other than the SBIR awardee that developed the technology to be pursued under the follow-on reward").

Nothing in § 638(j), however, bars the government from making that choice or requires it to (1) select a Phase III procurement and (2) award the contract therefor to the small business concern that performed the Phase I and II contracts. We decline to read into those contracts such a requirement for, and commitment by, the government. Whatever may be the policy favoring small business in the present situation, there is simply no valid basis for reading such a requirement into the contract.

In sum, § 638 imposes no duty on the government to award a Phase III contract to a concern that successfully completes a Phase II contract. Section 638 creates no rights for any private entities and therefore is not a "regulation . . . intended to define and state the rights of a class of persons." Berg v. United States, 192 Ct. Cl. 176, 183 (1970). The Court of Federal Claims correctly ruled that "nowhere does it [§ 638] impose an obligation directly upon a procuring agency nor does it create any enforceable rights under a SBIR contract." Night Vision, 68 Fed. Cl. at 383.

Indeed, if Night Vision believed it had a contractual commitment from the Air Force to give it a Phase III contract, one would expect it to submit a proposal for such contract – which it did not do.

B.  Night Vision contends that, even if there was not a written contract or provision requiring the Air Force to give it the Phase III contract, such an obligation was created by oral promises of Air Force officials that Night Vision would receive such a contract.  Although the contracting officer denied that she had so promised, other statements of hers indicate that such promises may have been made.  Night Vision also points to deposition testimony by its officers and, by Insight employees, that it received such promises, although the officers and employees did not state by whom or when those promises were made.  Night Vision argues that, because of these conflicting views on the factual issue, summary judgment was improper.

The fatal flaw in this argument, as the Court of Federal Claims pointed out, is that Night Vision "failed to produce evidence that a government representative with contracting authority made a contract with plaintiff."  Night Vision, 68 Fed. Cl. at 371.  Although the contracting officer has broad discretion to execute and amend contracts, administer contractual performance and decide contractual claims, her authority does not include determining the type of procurement to be used for a particular transaction.  That is a decision to be made by other officials of the Air Force, who have that authority — in this case apparently by Donald L. Utendorf, the Chief of the Research and Development Contracting office for the Technology Directorates at Wright-Patterson Air Force Base in December 1999.  Id. at 376.  Not only has Night Vision failed to attribute the alleged oral promises to an official authorized to make them, but much of the

evidence upon it which it relies does not even identify the official who allegedly made the promises.

C.  Night Vision further contends that even if there was no valid oral contract to award it the Phase III contract, there was an implied-in-fact contract to do so.  "An implied-in-fact contract is one founded upon a meeting of the minds and 'is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'"  Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003) (citation omitted).

The elements of an implied-in-fact contract are the same as those of an oral express contract.  Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997).  One of the elements Night Vision was required to show was "actual authority on the part of the government's representative to bind the government."  Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1265 (Fed. Cir. 2005) (emphasis omitted) (citing Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (en banc)).  The flaw we pointed out in Night Vision's oral contract theory — the failure to show that the Air Force officials who allegedly promised a Phase III contract had the authority to make that commitment — also is fatal to the implied-in-fact contract theory.

D.  We are mindful of the strong public policy, reflected in the SBIR program, favoring the awarding of government research and development contracts to small business concerns, as the Small Business Technology Council discusses in its amicus curiae brief.  That policy, however, cannot prevail over the fatal defects in Night Vision's case that we have discussed.  Night Vision undoubtedly had the hope, and perhaps the expectation, that if it successfully completed the Phase I and Phase II contracts, it would

be given a Phase III contract.  Unfortunately for Night Vision, however, it did not have such a binding contractual commitment from the Air Force.  Since its entire theory in this appeal is that the Air Force breached a contractual commitment, it cannot prevail.

CONCLUSION

The judgment of the Court of Federal Claims dismissing Night Vision's complaint is

<u>AFFIRMED</u>.