# United States Court of Appeals for the Federal Circuit

_____

**MUNCHKIN, INC., A DELAWARE CORPORATION,**
*Plaintiff-Appellant*

**v.**

**LUV N' CARE, LTD., A LOUISIANA CORPORATION, ADMAR INTERNATIONAL, INC., A DELAWARE CORPORATION,**
*Defendants-Appellees*

_____

2019-1454

_____

Appeal from the United States District Court for the Central District of California in No. 2:13-cv-06787-JEM, Magistrate Judge John E. McDermott.

_____

Decided: June 8, 2020

_____

TRAVIS W. MCCALLON, Lathrop GPM LLP, Kansas City, MO, argued for plaintiff-appellant. Also represented by LUKE MERIWETHER.

EDWARD DAVID MANZO, Husch Blackwell LLP, Chicago, IL, argued for defendants-appellees. Also represented by PHILIP DALE SEGREST, JR.; HARTWELL POWELL MORSE, III, Luv n' Care, Ltd., Monroe, LA.

_____

Before DYK, TARANTO, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

Munchkin, Inc. filed a lawsuit in the United States District Court for the Central District of California against Luv n' Care, Ltd. and Admar International, Inc. (collectively, LNC) for trademark infringement and unfair competition claims based on LNC's spillproof drinking containers. A year later, the district court granted Munchkin leave to amend the complaint to include new trademark infringement claims, trade dress infringement claims, and patent infringement claims based on U.S. Patent No. 8,739,993 (the '993 patent) which is directed to a spillproof drinking container. While the litigation was ongoing, Munchkin voluntarily dismissed all of its non-patent claims with prejudice and then its '993 patent was held unpatentable through an *inter partes* review (IPR) initiated by LNC at the Patent Trial and Appeal Board (the Patent Board). After we summarily affirmed the Patent Board's decision, *Munchkin, Inc. v. Luv n' Care, Ltd.*, 702 F. App'x 982 (Fed. Cir. 2017), Munchkin also dismissed its patent infringement claims.

The district court subsequently granted LNC's motion for attorney's fees under 35 U.S.C. § 285 and 15 U.S.C. § 1117(a), finding the case to be "exceptional" based on LNC's arguments in its fee motion that the trademark and trade dress infringement claims were substantively weak, and that Munchkin should have been aware of the substantive weakness of its patent's validity.

Munchkin appeals, contending that the district court's determination that this was an "exceptional" case lacks a proper foundation because LNC's fee motion insufficiently presented the required facts and analysis needed to establish that Munchkin's patent, trademark, and trade dress infringement claims were so substantively meritless to render the case exceptional. We agree with Munchkin. None

of these issues was fully adjudicated before the court on the merits, and given the limited arguments LNC made in support of its fee motion, we hold that the district court abused its discretion in granting the motion and we reverse the exceptional-case determination.

BACKGROUND

Munchkin's lawsuit against LNC, filed on September 16, 2013, initially contained only trademark and unfair competition claims based on a version of Munchkin's CLICK LOCK logo for spillproof cups, which is a registered trademark.   Munchkin's claims were directed against LNC's CLIK IT! brand spillproof cups.  The district court referred to Munchkin's trademark as the "original logo."

Munchkin later filed a motion to amend the complaint, seeking to replace the original CLICK LOCK logo as the basis for its trademark and unfair competition claims with a different version of the CLICK LOCK logo (the current logo).  The current and original CLICK LOCK logos are very similar in appearance, both prominently featuring the words "CLICK LOCK," "LEAK-PROOF TECHNOLOGY," AND "100% GUARANTEE."   Compared to the original CLICK LOCK logo, the current CLICK LOCK logo re-positioned the words "100% GUARANTEE" from the top of the logo to the middle of the logo.  In its motion to amend, Munchkin indicated that it had recently applied to register the current CLICK LOCK logo with the Patent and Trademark Office (USPTO).  The amended complaint also added trade dress infringement claims, alleging that the overall appearance of Munchkin's spillproof drinking cup was a protectable trade dress.  In addition, Munchkin sought to add a count of patent infringement, claiming that LNC's spillproof cups infringed Munchkin's '993 patent.

To justify its proposed addition of patent and trade dress claims to the case, Munchkin explained that the '993 patent had recently issued and that Munchkin had recently become aware of its potential trade dress rights for the

configuration of its spillproof drinking cup.  For the new trademark claims, Munchkin alleged that it had made a series of minor design changes in its branding, leading to focusing on the slightly altered mark in its current CLICK LOCK logo.  These minor design changes led Munchkin to file an application to register the current CLICK LOCK logo on May 7, 2014.  LNC opposed Munchkin's motion, pointing out that Munchkin had provided the current CLICK LOCK logo in an exhibit attached to the initial complaint, and that Munchkin knew or should have known about any claims pertaining to that mark when it filed its original complaint.  J.A. 605–06.  Despite these arguments, the district court granted Munchkin's motion to amend the complaint, finding no bad faith, undue prejudice to LNC, or any proof of futility as to the new claims.  Order Granting Plaintiffs' Motion for Leave to File First Amended Complaint, *Munchkin, Inc. v. Luv n' Care, Ltd.*, No. 2:13-cv-06787-JEM, at 2–3 (C.D. Cal. Oct. 1, 2014), ECF No. 45.

As the case progressed, LNC sought a claim construction that would support its invalidity contentions based on two prior art references that both disclose a mechanism for locking a cap to a bottle, U.S. Patent No. 3,101,856 (Whiteman) and U.S. Patent No. 4,230,232 (Atkins).  But, in its *Markman* order, the district court disagreed with LNC's preferred construction and instead adopted Munchkin's narrower, proposed construction for the claim term "a platform is disposed on the shoulder" to mean "[a] structural feature distinct from the shoulder and the container body and disposed on the shoulder to change the contour of the shoulder."  Claim Construction Order, *Munchkin, Inc. v. Luv n' Care, Ltd.*, No. 2:13-cv-06787-JEM, at 14 (C.D. Cal. Aug. 27, 2015), ECF No. 101 (Claim Construction Order).

Subsequently, LNC filed an IPR petition at the Patent Board challenging the '993 patent, which the Patent Board instituted.  Before the Patent Board instituted the IPR, Munchkin dropped all of its non-patent claims in the

district court litigation, claiming it wanted to streamline the litigation to focus just on its patent infringement claim. Order Granting Defendants' Motion for Attorney's Fees, *Munchkin, Inc. v. Luv n' Care, Ltd.*, No. 2:13-cv-06787-JEM, at 2, 7–8 (C.D. Cal. May 2, 2018) (*Munchkin*).

During the IPR, in contrast to the district court, the Patent Board adopted LNC's broader claim construction, under the broadest reasonable interpretation standard, and subsequently found the '993 patent's claims unpatentable in a final decision. Munchkin appealed, and we summarily affirmed. *Munchkin, Inc.*, 702 F. App'x 982. After our affirmance of the Patent Board's unpatentability decision, Munchkin dropped the patent claim in the district court.

LNC then filed a motion for attorney's fees under 35 U.S.C. § 285 (for the patent infringement claim) and 15 U.S.C. § 1117(a) (for the trademark and trade dress claims). The district court granted the fee motion, determining that Munchkin's claim for trademark infringement of the current CLICK LOCK logo, trade dress infringement claims, and patent infringement claim were all so substantively weak as to render the case "exceptional." Included in that fee award were LNC's attorney's fees for litigating the IPR at the Patent Board that held the '993 patent unpatentable and its associated appeal.

In its review of Munchkin's trademark claim, the district court criticized Munchkin for switching the basis for its trademark infringement claim from the original CLICK LOCK logo to the current CLICK LOCK logo, when both logos had been identified in the initial complaint and Munchkin still continued to use both CLICK LOCK logos in commerce. *Munchkin* at 7. Even though the district court had previously allowed Munchkin to amend its complaint to replace the original CLICK LOCK logo with the current CLICK LOCK logo, the district court, in its fee order, nonetheless regarded this sequence of events as

confusing and making "clear the substantive weakness of Munchkin's trademark related claims based on the current logo." *Id.*

For the trade dress claims, the district court credited LNC's assertion that, prior to the market introduction of Munchkin's cup products with the alleged trade dress configuration, there were many other cups that already exhibited the same features, but the district court opinion did not discuss or identify any specific cups or features. *Id.* The opinion simply stated that "LNC asserts it was able to produce prior art cup samples and catalogs evidencing that many of the alleged features of Munchkin's trade dress represented design characteristics in common use well before" Munchkin's products were introduced. *Id.* In the district court's view, LNC's assertion, along with Munchkin's decision to dismiss the claims with prejudice, sufficiently demonstrated the substantive weakness of Munchkin's trade dress claims. *Id.* at 7–8.

As to the patent infringement claim, the district court concluded that Munchkin should have realized its patent infringement claim was substantively weak after receiving LNC's invalidity contentions and LNC's IPR petition, both of which relied on the same Whiteman and Atkins prior art references. *Id.* at 8–9. The district court, however, did not analyze the relative merit of Munchkin's validity theory, nor did it acknowledge that LNC's invalidity positions in both documents were premised on a claim construction that the district court had rejected in its *Markman* order. LNC also alleged that Munchkin, during prosecution of the '993 patent, withheld from the USPTO information regarding Playtex's Twist 'N Click cups, of which Munchkin was aware through an earlier, unrelated litigation between Munchkin and Playtex. In LNC's view, the Playtex prior art cups were highly material to the validity of the '993 patent and Munchkin had concealed them from the court as well as the USPTO during the patent examination

process.[1]  *Id.* at 9.  The district court, without analysis, agreed, finding that this was "another indication of substantive weakness."  *Id.*  In sum, the district court concluded that "Munchkin was objectively unreasonable in persisting in all out litigation" in the face of "these red flag warnings" as to the '993 patent's validity.  *Munchkin* at 10.  Munchkin appealed.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Under both the Patent Act and the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285; 15 U.S.C. § 1117(a).  For attorney's fees under the Lanham Act, we apply the same standard as the regional circuit.  *See Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1334–36 (Fed. Cir. 2017) (considering the standard the Second Circuit would be likely to apply for attorney's fees under the Lanham Act), *vacated on other grounds* 140 S. Ct. 1492 (2020).  The Ninth Circuit interprets § 1117(a) "in tandem" with the Supreme Court's standard for attorney's fees under the patent statutes set forth in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014).  *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180–81 (9th Cir. 2016) (en banc) ("We agree with the majority of our sister circuits and conclude that *Octane Fitness* and *Highmark* have altered the analysis of fee

---

[1]    Munchkin, however, did disclose U.S. Patent Publication No. 2009/0242562 (Valderrama) to the USPTO during the examination of its patent application, which Munchkin alleges corresponded to the Playtex Twist 'N Click cups.  Appellant's Reply Br. at 7.  Valderrama is listed on the face of the '993 patent.  *Id.*; *see also* '993 patent.  LNC acknowledged that Valderrama is "closely related" to the Playtex cups, and its "teachings are generally embodied" in the Playtex cups.  J.A. 2724.

applications under the Lanham Act."); *Romag Fasteners*, 866 F.3d at 1335 ("Since *Octane* was decided, the Third, Fourth, Fifth, Sixth, and Ninth Circuits have all held that the *Octane* 'Court was sending a clear message that it was defining "exceptional" not just for the fee provision in the Patent Act, but for the fee provision in the Lanham Act as well.'" (quoting *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014))).

The Supreme Court in *Octane Fitness* held that an exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 572 U.S. at 554. This analysis considers the case based on the totality of the circumstances, requiring a movant to show the case is exceptional by a preponderance of the evidence. *Id.* at 554, 557–58; *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1306 (Fed. Cir. 2018). Courts also do not award attorney's fees as "a penalty for failure to win a patent infringement suit." *Octane Fitness*, 572 U.S. at 548. "The legislative purpose behind [35 U.S.C.] § 285 is to prevent a party from suffering a 'gross injustice,'" not to punish a party for losing. *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017).

We review a district court's determination that a case is exceptional for abuse of discretion. *Highmark Inc. v. Allcare Health Mgt. Sys., Inc.*, 572 U.S. 559, 561 (2014). A district court abuses its discretion when it makes "a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings." *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017) (citing *Highmark*, 572 U.S. at 563 n.2). While we generally give great deference to a district court's exceptional-case determination, a district court nonetheless must "provide a concise

but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

This case represents "an unusual basis for fees," in that the district court's exceptional-case determination rests on an examination of issues—trademark infringement, trade dress validity, and patent validity—that were not fully litigated before the court. *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1356–57 (Fed. Cir. 2019). That fact alone, however, would not create a basis to deny a fee motion. In *Thermolife*, for example, we held that it was not an abuse of discretion to award attorney's fees to the defendant in light of the plaintiff's failure to conduct an adequate presuit infringement investigation, even though the infringement question had not been adjudicated before the asserted claims were held unpatentable. *Id.* We at the same time also made abundantly clear that district courts have wide latitude "to *refuse* to add to the burdens of litigation by opening up issues that have not been litigated but are asserted as bases for a fee award." *Id.* at 1357 (citing *Spineology, Inc. v. Wright Med. Tech., Inc.*, 910 F.3d 1227, 1230 (Fed. Cir. 2018)). But when the bases of an attorney's fee motion rest on issues that had not been meaningfully considered by the district court, as is the case here, "a fuller explanation of the court's assessment of a litigant's position may well be needed when a district court focuses on a freshly considered issue than one that has already been fully litigated." *Id.* In the present case, the merits of the patent, trademark, and trade dress claims were all freshly considered issues for the district court, presented in the context of a fee motion, but LNC failed to make the detailed, fact-based analysis of Munchkin's litigating positions to establish they were wholly lacking in merit. The district court's opinion granting a fee award likewise lacked adequate support.

## I.   The Patent Infringement Claim

The district court determined that this case was exceptional, in part, because Munchkin unreasonably chose to defend the validity of its patent in light of its allegedly glaring weakness. *Munchkin* at 8–9. But neither LNC's fee motion nor the district court's opinion comes close to supporting the conclusion that Munchkin acted unreasonably.

Claim 1 of the '993 patent claims a "spillproof drinking assembly" having a container body and a neck that extends from the container body's upper end. '993 patent at claim 1. The claim further recites that the outer surface of the container body's upper end "extends below the neck radially outward to define a shoulder," and that "a platform is disposed on the shoulder." *Id.* Before both the district court and the Patent Board in the co-pending IPR, LNC's invalidity challenge focused on two prior art references, Whiteman and Atkins. A cornerstone of LNC's challenge was the need to garner a favorable, broad claim construction for the claim term "a platform is disposed on the shoulder" to ensure that the claims would be broad enough to read on the prior art references. In effect, the dispute centered on Munchkin's position that the claim "require[s] the neck to join the container body [such that] the platform cannot be disposed between the shoulder and the neck." *See Luv n' Care, Ltd. v. Munchkin, Inc.*, No. IPR2015-00872, at 10 (P.T.A.B. Sept. 15, 2016) (internal quotations omitted). But LNC's construction did not contain such a requirement. The district court rejected LNC's construction in its *Markman* order and adopted Munchkin's narrower construction, considerably undermining LNC's invalidity theory based on Whiteman and Atkins.

The district court's decision awarding LNC its attorney's fees never adequately explains why Munchkin's validity position was unreasonable when the district court's claim construction ruling favored Munchkin and erected a serious hurdle to LNC's invalidity challenge. The district

court attempted to sidestep this hurdle by dismissing its own *Markman* claim construction as merely a non-final, interim order. *Munchkin* at 11. But the possibility of reconsideration of the claim construction, whether by the district court or this court, is immaterial. The relevant question for purposes of assessing the strength of Munchkin's validity position is not whether its proposed construction is *correct*; rather the relevant question is whether it is *reasonable. Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018); *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015). Here, neither the district court's opinion nor LNC's fee motion attempted to address, in any fact-intensive way, the relative strength and reasonableness of Munchkin's validity position. The fact that Munchkin's validity defense was keyed to its claim construction argument—an argument that the district court itself had accepted in its *Markman* order—made the need for a full and detailed explanation in this case for why Munchkin's litigating position was exceptionally weak all the more imperative.

The district court was also led astray by LNC's argument that Munchkin was unreasonable in maintaining its patent infringement lawsuit once the Patent Board instituted the IPR on the '993 patent, because (1) published statistics at the time indicated that the Patent Board cancels some of a patent's instituted claims 85% of the time and cancels all of the instituted claims 68% of the time, (2) the Patent Board's final decision found all of the '993 patent's claims unpatentable, and (3) this court summarily affirmed that decision. These IPR statistics combined with the merits outcome are not enough, for they tell us nothing about the "substantive strength of [Munchkin's] litigating position (considering both the governing law *and the facts of the case*)." *Octane Fitness*, 572 U.S. at 554 (emphasis added). That Munchkin's patent was ultimately held unpatentable does not alone translate to finding its defense of the patent unreasonable. *SFA Sys.*, 793 F.3d at 1348. Nor

are the merits outcomes of other patent owners' IPR cases material, as those case outcomes are based on their own, different facts. The upshot of LNC's statistics and outcome-based argument would be to subject every patent owner to paying a § 285 fee award in a patent suit anytime its patent is canceled in a co-pending IPR proceeding, without any consideration of the relative strength of the patent owner's legal theories, claim construction arguments, or proffered evidence in defense of the patent. That form of short-cut thinking is wholly incompatible with *Octane Fitness*'s fact-dependent, "case-by-case" requirement, and we reject it. In this case, LNC cannot point to any statement by the Patent Board suggesting that it viewed Munchkin's position to be frivolous or anything out of the ordinary, nor did it or the district court ever conduct that required substantive analysis to demonstrate that Munchkin's defense was so meritless as to stand out from the norm. Moreover, that the Patent Board adopted LNC's preferred claim construction does not automatically indicate that it was unreasonable for Munchkin to rely on the district court's claim construction, given that the two proceedings applied different claim construction standards.

Similarly, we find the district court's finding that the Playtex Twist 'N Click cups represented "another indication of substantive weakness" of the '993 patent's validity to be wholly conclusory and cannot support a determination of exceptionality. The district court opinion, like LNC's fee motion, fails to offer any details explaining how these Playtex cups invalidate the patent claims, and why it would be unreasonable to suggest otherwise. The district court instead appeared to assume that Munchkin's failure to disclose the Playtex cups to the USPTO during patent examination alone was proof that Munchkin knew its validity position lacked merit. LNC's fee motion simply asserts that "Munchkin was more than aware that the validity of the '993 patent was seriously placed in question as a result of highly material prior art patents, bottle and

Playtex Twist 'N Click cup products that were not considered by the Patent Examiner during prosecution of the '993 patent application." J.A. 3607. Whether styled as an invalidity or inequitable conduct theory, LNC's motion needed to go much further than this statement to meet its burden of proof. In fact, the Playtex cups were not even officially part of the record, as the district court had never ruled on LNC's motion to amend its invalidity contentions to add the Playtex cups. Such a superficial case cannot support a finding of exceptionality, even under the very deferential standard of review.

In sum, after reviewing the district court opinion and considering all the arguments, we conclude that no adequate case has been made for finding that Munchkin's position and conduct relating to its patent infringement claim support a determination that this case is "exceptional" under § 285. The district court's finding to the contrary was an abuse of discretion.[2]

## II. The Trademark Infringement Claims

The ultimate problem with the district court's finding that the trademark claims were "exceptional" under § 1117(a) is that it conflicts with the court's earlier order granting Munchkin's motion to amend the complaint. All of the district court's criticisms in its fee order of Munchkin's decision to switch from the original CLICK LOCK logo to the current CLICK LOCK logo as the basis for its

---

[2]    We recognize that the district court granted LNC its attorney's fees attributable to both the district court proceeding and the related IPR proceeding, but in light of reversing the award of fees, we do not reach this issue of whether in the circumstances of this case § 285 permits recovery of attorney's fees for parallel USPTO proceedings. *See generally* Order, *Amneal Pharms. LLC v. Almirall, LLC*, ___ F.3d ___ (Fed. Cir. 2020) (No. 2020-1106).

trademark claim were objections LNC previously raised in opposing Munchkin's motion to amend the complaint. Yet the district court granted the motion to amend, finding no grounds for prejudice, bad faith, or futility, despite LNC's allegations that Munchkin's actions were duplicitous. Moreover, the district court and LNC do not point to any new facts that were not considered at that time. In light of this, Munchkin cannot be faulted for litigating a claim it was granted permission to pursue. *See Checkpoint Sys.*, 858 F.3d at 1376 ("Absent misrepresentation to the court, a party is entitled to rely on a court's denial of summary judgment and JMOL . . . as an indication that the party's claims were objectively reasonable and suitable for resolution at trial." (quoting *Medtronic Navigation, Inc. v. Brain-LAB Medizinische Computersysteme GmbH*, 603 F.3d 643, 954 (Fed. Cir. 2010))). As with the patent claim discussed above, the district court was required to make specific findings about the trademark infringement merits themselves, not merely presume the substantive weakness of the merits from Munchkin's choice to assert a slightly different trademark logo.

Munchkin's dismissal of its claims with prejudice also does not establish, by itself, a finding that the merits were so substantively weak as to render the claims exceptional. There are numerous reasons, including Munchkin's asserted desire to streamline the litigation, to drop a claim, not just substantive weakness. We decline to adopt a categorical rule that a party's litigating position is presumptively so meritless as to stand out from the norm whenever it dismisses its claims with prejudice. Rather, the fee movant must still make a fact-based case for why the opposing party's position was unreasonable.

LNC presents for our consideration on appeal a comparison of its CLIK IT! logo with Munchkin's asserted CLICK LOCK logo to demonstrate that Munchkin's trademark infringement claim was wholly meritless. But the relevant likelihood of confusion factors require

consideration of many factors, not just one. A unique challenge for LNC here, given that the trademark claim was never adjudicated, is that it must not only prove through its fee motion no likelihood of confusion between its mark and Munchkin's mark, but it must go further, and prove that Munchkin's position is substantively unreasonable. While that task may be particularly onerous, it is not insurmountable. *See, e.g.*, *Thermolife*, 922 F.3d at 1357. But here, the district court never engaged in this likelihood of confusion analysis and we think for good reason: LNC's overall analysis was not sufficiently developed to be a basis for a fee award. Simply identifying visual differences between its CLIK IT! logo and Munchkin's current CLICK LOCK logo is not a full enough inquiry to demonstrate that Munchkin's trademark claim was unreasonable.

### III. The Trade Dress Infringement Claims

Finally, the district court's finding that the trade dress claims were particularly weak lacks adequate support. Again, the district court allowed Munchkin to amend its complaint to include these claims. LNC never filed a motion to dismiss, and the merits of Munchkin's trade dress allegations were never adjudicated. In its fee order, the district court accepted as true LNC's assertion that "many of the alleged features of Munchkin's trade dress" were commonly used in prior cups before Munchkin introduced its drinking cups embodying the alleged trade dress configuration. *Munchkin* at 7. But even assuming that unsubstantiated assertion is true, the fact that different cups share several features does not, by itself, demonstrate that the alleged trade dress lacks secondary meaning or is otherwise not protectable. *VIP Prods. LLC v. Jack Daniel's Properties, Inc.*, 953 F.3d 1170, 1173–74 (9th Cir. 2020) ("Although whiskey companies use many of the individual elements employed by JDPI on their bottles, the Jack Daniel's trade dress 'is a combination [of] bottle and label elements,' . . . and the district court correctly found that these elements *taken together* are both nonfunctional and

distinctive."); *In re Chippendales USA, Inc.*, 622 F.3d 1346, 1355–56 (Fed. Cir. 2010) (holding that whether the trade dress was "a common basic shape or design" was "inapplicable" because "there has been no showing that the [trade dress] is common generally"). LNC's fee motion, however, presented a conclusory and inadequate case to demonstrate that it was objectively unreasonable for Munchkin to assert any protectable trade dress rights. Asserting that "many" features of Munchkin's product design are contained in prior cups without a detailed showing of how that affects the scope of Munchkin's asserted trade dress right, or even identifying which features were already on prior cups, amounts to a failure of proof. *See Chippendales*, 622 F.3d at 1355–56. Likewise, LNC's asserted belief that it is "highly unlikely" Munchkin could prove secondary meaning for its product configuration on the market for less than two years is nothing more than speculation. And, even more critically, none of these barebones allegations justify a finding that Munchkin's position that it owned a protectable, valid trade dress right was unreasonable. As with the patent claims and the trademark claims, the district court abused its discretion in finding that Munchkin's trade dress claims were exceptional, when LNC presented nothing to justify such a finding.

## CONCLUSION

In view of the foregoing, we reverse the district court's grant of attorney's fees.

## **REVERSED**