Note: This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

---

**PAUL E. ARLTON, DAVID J. ARLTON,**
*Plaintiffs-Appellants*

**v.**

**AEROVIRONMENT, INC.,**
*Defendant-Cross-Appellant*

---

2021-2049, 2024-1084, 2024-1159

---

Appeals from the United States District Court for the Central District of California in No. 2:20-cv-07438-AB-GJS, Judge Andre Birotte, Jr.

---

Decided: February 4, 2026

---

DEBORAH POLLACK-MILGATE, Barnes & Thornburg LLP, Indianapolis, IN, argued for plaintiffs-appellants. Also represented by HEATHER B. REPICKY, Boston, MA; RONALD J. WAICUKAUSKI, Williams Law Group, LLC, Indianapolis, IN.

SCOTT A. FELDER, Wiley Rein, LLP, Washington, DC, argued for defendant-cross-appellant. Also represented by SCOTT M. MCCALEB, WESLEY EDENTON WEEKS.

CAROLINE W. TAN, Civil Division, United States Department of Justice, Washington, DC, argued for amicus curiae United States.    Also represented by BRIAN M. BOYNTON, BRADLEY HINSHELWOOD.

———————————

Before PROST, CUNNINGHAM, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

Paul and David Arlton (the "Arltons") appeal from the district court's grant of summary judgment, holding that AeroVironment, Inc. ("AeroVironment") could not be held liable for the patent infringement alleged in the Arltons' complaint as AeroVironment's affirmative defense under 28 U.S.C. § 1498 covered all of its alleged infringing activities.    AeroVironment cross-appeals the district court's denial of its motion for attorneys' fees.    We affirm.

I

The Arltons are the inventors and co-owners of U.S. Patent No. 8,042,763 ("'763 patent"), entitled "Rotary Wing Vehicle," which pertains to a rotary wing vehicle with an "elongated tubular backbone" and "a counter-rotating coaxial rotor system."    J.A. 40.    The Arltons licensed the '763 patent to their company, Lite Machines Corporation ("Lite Machines"), which produced Unmanned Aerial Vehicles ("UAVs") allegedly embodying claim 1 of the patent.

Beginning in 2005, the Navy, Air Force, and Special Operations Command awarded contracts to Lite Machines pursuant to the Small Business Innovation Research ("SBIR") and Small Business Technology Transfer ("STTR") programs, which are governed by a statute, 15 U.S.C. § 638.    Consistent with § 638, SBIR and STTR contracts are awarded in three phases: Phase I, which involves "determining . . . the scientific and technical merit and feasibility of ideas that appear to have commercial potential;" Phase II, which involves "further develop[ing] proposals

which meet particular program needs;" and then Phase III, which "involves commercial applications of SBIR-funded research and development or products or services intended for use by the Federal Government, by follow-on non-SBIR Federal funding awards." *Night Vision Corp. v. United States*, 469 F.3d 1369, 1371 (Fed. Cir. 2006) (internal quotation marks omitted). Section 638 requires that "[t]o the greatest extent practicable," Phase III contracts should be awarded "to the SBIR and STTR award recipients that developed the technology." 15 U.S.C. § 638(r)(4).

Lite Machines received multiple Phase I and Phase II contracts to develop the technology it ultimately patented in the '763 patent. In 2016, however, the Air Force informed the Arltons that Lite Machines would not be awarded any further follow-on work, including any Phase III contract. Consequently, the Arltons ceased operations and closed Lite Machines.

Meanwhile, in 2013, AeroVironment became a subcontractor to the Jet Propulsion Laboratory ("JPL"), a federally-funded research center managed by the California Institute of Technology ("Caltech") under a contract between Caltech and the National Aeronautics and Space Administration ("NASA"). The subcontract required AeroVironment to build a UAV helicopter for JPL to provide to NASA for use on the planet Mars. AeroVironment's subcontracts make clear that they are "under JPL's NASA prime contract." J.A. 138; *see also* J.A. 141, 149, 156. Together, AeroVironment and JPL developed a small, autonomous helicopter, named the "Ingenuity," which later served on missions to explore the Martian surface.

In August 2020, the Arltons sued AeroVironment in the U.S. District Court for the Central District of California, alleging that AeroVironment's making, using, offering for sale, and sales of Ingenuity within the United States infringe the '763 patent. Several months later, in November 2020, AeroVironment informed the Arltons it intended to

move for summary judgment based on immunity from liability provided to it by 28 U.S.C. § 1498, on the grounds that any patent infringement AeroVironment engaged in was for the benefit of, and with the consent of, the federal government.

AeroVironment filed its summary judgment motion in February 2021. AeroVironment argued it had developed Ingenuity for the government pursuant to its subcontracts with JPL and that the government had expressly authorized and consented to any activity that happened to infringe the '763 patent. Therefore, any suit for patent infringement had to be brought by the Arltons against the government, not AeroVironment, in the U.S. Court of Federal Claims, not district court. The Arltons responded by contending that AeroVironment's infringing activities could not have been for the government, and the government could not have validly authorized or consented to AeroVironment's infringement, because the government was obligated under § 638 to award Phase III contracts to Lite Machines, since Lite Machines was an SBIR-recipient and had developed the underlying technology. In reply, AeroVironment urged the district court to reject the Arltons' contention because the Court of Federal Claims has exclusive jurisdiction over disputes concerning government contract awards and, in any event, § 638 has nothing to do with whether § 1498 applies here.

The district court granted AeroVironment's motion for summary judgment. It determined there was no genuine dispute over the material fact that AeroVironment is a government subcontractor and was contracted specifically to work on Ingenuity; thus, its alleged infringement was performed for the government. The district court further concluded there was "no genuine dispute that the [g]overnment provided authorization and consent" via the provision in JPL's prime contract with NASA, and in each of AeroVironment's subcontracts, providing that "[t]he [g]overnment authorizes and consents to *all* use and

manufacture of any invention described in and covered by a United States patent in the performance of this contract or any subcontract at any tier." J.A. 12; *see also id.* at 5. Moreover, the district court rejected the Arltons' argument that § 638 restricts the extent to which the government can afford § 1498 immunity to its contractors and subcontractors, noting that the Arltons did not cite "any legal support for their position that when a 'stated [g]overnment policy' articulated in a government contract conflicts with another stated [g]overnment policy th[en] the contract cannot be 'for the [g]overnment.'" J.A. 10-13.

While the summary judgment motion was pending, the Arltons moved for leave to amend their complaint to add trade secret claims. The district court denied this motion. The court concluded that the Arltons had not been diligent and failed to show good cause to amend after the deadline provided in the governing scheduling order. In reaching this conclusion, the district court observed that the Arltons had admitted that Ingenuity's specific characteristics relating to the Arltons' purported trade secrets had been publicly available and they had suspected that Ingenuity incorporated these trade secrets at the time they filed their original complaint.

Thereafter, in May 2021, just days before the district court entered final judgment based on its summary judgment order, AeroVironment appeared in a segment on the television program *60 Minutes*. In the segment, an AeroVironment executive demonstrated the functionality of a terrestrial version of Ingenuity, which AeroVironment called the "Terry." Based on the newly discovered evidence of the existence of Terry, the Arltons moved to vacate the summary judgment order and to reopen discovery. In June 2021, the district court granted the Arltons' motion and the parties proceeded to take additional discovery.

At the conclusion of the new discovery, in April 2023, the Arltons filed a new memorandum in opposition to

AeroVironment's motion for summary judgment, arguing that AeroVironment had used Terry to attract market attention, including through the *60 Minutes* appearance and demonstrations at conferences and to potential investors. AeroVironment replied with a memorandum in support of its motion for summary judgment, again based on § 1498. AeroVironment argued that none of its activities constituted a substantial commercial use, so the entirety of its conduct was within the scope of AeroVironment's § 1498 immunity.

In August 2023, the district court again granted summary judgment to AeroVironment. The court determined that AeroVironment's demonstrations of Terry were *de minimis* uses and, given the applicability of § 1498, could not support a judgment of liability against a private party in district court. It further held that "[t]he other activities on which [the Arltons] rely would not be actionable even outside the § 1498 context" and, hence, that conduct plainly "cannot be infringing where § 1498 applies." J.A. 29. The district court entered judgment for AeroVironment in September 2023.

AeroVironment then moved for an award of attorneys' fees pursuant to 35 U.S.C. § 285. It asserted that the Arltons' decision to proceed with litigation when any reasonable person would have recognized that AeroVironment was not a proper defendant made this patent case "exceptional" within the meaning of the statute. The district court disagreed, explaining that though the Arltons were ultimately unsuccessful, their claims were neither frivolous nor made in bad faith. Hence, the court denied AeroVironment's motion for fees.

Both parties timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

II

On procedural issues not unique to the areas of law that are exclusively assigned to the Federal Circuit, we apply the law of the pertinent regional circuit. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999). The Ninth Circuit accords de novo review to a district court's grant of summary judgment, which is appropriate if, after viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute of material fact. *See Buchanan v. Watkins & Letofsky, LLP*, 30 F.4th 874, 877 (9th Cir. 2022). A district court's denial of a motion for leave to amend is reviewed for abuse of discretion. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 949 (9th Cir. 2006). A decision resting on a clearly erroneous finding of fact may constitute an abuse of discretion. *See Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005).

Whether a patent case is exceptional under 35 U.S.C. § 285 is governed by Federal Circuit law. *See Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 914 (Fed. Cir. 2019) ("We apply Federal Circuit caselaw to the § 285 analysis, as it is unique to patent law.") (internal quotation marks and brackets omitted). We "review all aspects of a district court's § 285 determination for abuse of discretion." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 561 (2014).

III

We start with the Arltons' appeal and, in particular, their challenge to the district court's grant of summary judgment of no liability based on AeroVironment's § 1498 affirmative defense. To prevail on a § 1498 defense, an accused infringer must show that the patented invention was used "by or for the United States," 28 U.S.C. § 1498, which requires proof that such use was "for the Government" and "with the authorization or consent of the Government." *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1381 (Fed. Cir.

2002).  We agree with the trial court that AeroVironment is entitled to judgment on its § 1498 defense.

## A

The Arltons' first basis for contending that the district court erred is that the government could not validly authorize or consent to AeroVironment's patent infringement, under § 1498, because doing so conflicts with the government's obligation to award any SBIR Phase III contract to Lite Machines, which was the SBIR recipient responsible for the research and development of the pertinent technology during Phases I and II.  The Arltons rely specifically on 15 U.S.C. § 638, which provides:

> [t]o the greatest extent practicable, Federal agencies and Federal prime contractors shall . . . issue, without further justification, Phase III awards relating to technology . . . to the SBIR and STTR award recipients that developed the technology.

15 U.S.C. § 638(r)(4).  Section 638's use of the mandatory term "shall," according to the Arltons, obligates the government to award Phase III contracts to Phase I and II awardees unless doing so would be "completely infeasible." Appellants' Open. Br. at 34.  Because, in their view, this standard was not met here, the government was obligated to award the Phase III contract to Lite Machines, not AeroVironment; thus, the government cannot have validly consented to AeroVironment's infringement of the '763 patent, notwithstanding § 1498.  We are not persuaded.

As an initial matter, even if AeroVironment were correct that § 638 obligated the government to award the Phase III contract to Lite Machines, remedying this error would require Lite Machines (not the Arltons) to bring a protest action (not a patent infringement lawsuit) in the Court of Federal Claims (not a district court). *See Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1243 (Fed. Cir. 2010) (holding that Court of Federal Claims has

"exclusive jurisdiction to review the full range of procurement protest cases previously subject to review in [both] the federal district courts and the Court of Federal Claims") (internal quotation marks omitted). In any event, we conclude that § 638 does not narrow the applicability of § 1498.

There is simply no incompatibility, or even conflict, between § 638 and § 1498. Whereas § 638 guides the government's award of contracts among different private entities, § 1498 governs who a patentee must sue for patent infringement (a direct infringer or the United States) and in which court (district court or the Court of Federal Claims).[1] Accordingly, § 638 does not limit the government's discretion to assume liability under § 1498.

---

[1] The full text of the pertinent part of 28 U.S.C. § 1498(a) is as follows:

Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. . . . [T]he use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

B

The Arltons next argue that, even accepting that a § 1498 defense could be available to AeroVironment notwithstanding the government's alleged obligations under § 638, summary judgment was nonetheless improper because AeroVironment engaged in patent infringement that was not performed "for the United States." Specifically, they contend that even if AeroVironment's work on Ingenuity is immunized under § 1498, its work on Terry is not also protected. Once again, we do not agree with the Arltons.

Taking the evidence in the light most favorable to the Arltons, as we must, it cannot be genuinely disputed that Terry was manufactured by AeroVironment with the authorization and consent of the government. It is undisputed that Terry is a terrestrial version of the Ingenuity helicopter, such that Terry's capabilities and operations reflect those of Ingenuity, allowing the government (and its prime contractor, JPL) to use Terry to assess functions of the Ingenuity (which is far away on Mars). J.A. 24.

The record includes a declaration from AeroVironment's Technical Lead, Matthew Keennon, who explained that AeroVironment created Terry at the prompting of JPL, for the government, and JPL contracted with AeroVironment to use Terry. J.A. 990-91 (declaring that JPL's head engineer on Mars Helicopter project "suggested that there could be a use for a helicopter that functioned as a stand-alone science vehicle," adding that "[t]o meet JPL and NASA's needs, AeroVironment built a terrestrial copy of Ingenuity, named 'Terry'"). The Arltons direct us to portions of Mr. Keennon's deposition testimony, in which he said "[t]he primary purpose" for creating Terry "was basically to have a marketing visual aid that we could use to promote AeroVironment's capabilities." J.A. 1454. The Arltons further argue that JPL did not identify a use for Terry until several months after AeroVironment completed

it. Even if a reasonable jury could find from this record that AeroVironment did not originally manufacture Terry for the government, JPL's subsequent use of Terry to conduct acoustic testing and the government's express consent (including through this litigation) to Terry's creation establish, as a matter of law, that Terry's manufacture and the uses apparent from the record are within the scope of the immunity provided to AeroVironment under § 1498. *See* J.A. 1030-35; J.A. 166 (providing, in NASA's prime contract with JPL, that "[t]he [g]overnment authorizes and consents to all use and manufacture of any invention described in and covered by a United States patent in the performance of the Prime Contract *or any Lower-tier Subcontract at any tier*") (emphasis added); Gov't Br. at 18 ("[T]he government's authorization and consent extend to the manufacture of Terry and its use in the tests for resolution of Ingenuity's audio anomalies. . . . [T]o the extent any doubt remains, the United States hereby provides its authorization and consent through its participation in this appeal.").

We reach the same conclusion with respect to what the Arltons characterize as AeroVironment's uses of Terry for marketing purposes.[2] The Arltons argue that AeroVironment used Terry for a non-governmental, commercial purpose by demonstrating and displaying Terry at various public events, including the Association for Unmanned Vehicles Systems International ("AUVSI"), the Wright Brothers National Memorial, Syracuse University, and in the *60 Minutes* appearance. AeroVironment also performed

---

[2] The government takes no position on the application of § 1498 to educational and marketing activities, other than to say such activities are not categorically precluded from protection under the statute. *See* Gov't Br. at 18; Oral Arg. at 18:13-19:24, available at cafc.uscourts.gov/oral-arguments/21-2049_10062025.mp3.

demonstrations of Terry for potential investors, including SpaceX, UP.Partners, and Impulse Space.

AeroVironment's § 1498 defense extends to each of these uses of Terry. We have previously indicated that, when a defendant "received no commercial profit" and used infringing devices "solely for purposes of display" when demonstrating work performed on behalf of the government, it has not engaged in commercial conduct that would vitiate a § 1498 defense. *See TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1061 (Fed. Cir. 1986).

Here, viewing the evidence in the light most favorable to the Arltons, AeroVironment's demonstrations do not qualify as commercial uses outside the ambit of § 1498. For example, AeroVironment's presentation at the AUVSI was entitled "Flying on Mars: Development of the Ingenuity Mars Helicopter," and its talking points emphasized that Terry is a terrestrial version of Ingenuity. J.A. 1530, 1535. While AeroVironment may have received reputational benefits from its demonstrations, including its appearance on *60 Minutes*, there is no evidence that AeroVironment derived any commercial profit from the demonstrations. AeroVironment's uses of Terry with potential investors, which as far as the record reveals also did not lead to any profit, cannot reasonably support a contrary finding.

The record is devoid of any evidence that AeroVironment offered Terry for sale to anyone. Nor is there evidence that internal discussions within the company about potentially commercializing Terry ever materialized into actual engagements with prospective business partners. These non-sales cannot constitute evidence of commercial activity falling outside the scope of § 1498. *See generally BAE Sys. Info. & Elec. Sys. Integration Inc. v. Aeroflex Inc.*, 2011 WL 3474344, at *12 (D. Del. Aug. 2, 2011) ("Indeterminate speculation and even unrealized ambitions to sell into an international market are not . . . sufficient to defeat the § 1498 defense.").

At bottom, there is simply not sufficient evidence from which a reasonable jury could find that AeroVironment engaged in infringing conduct that was not for the benefit of, and with authorization of and consent from, the government. Therefore, we affirm the district court's grant of summary judgment to AeroVironment.[3]

IV

The Arltons additionally fault the district court for denying their motion for leave to file an amended complaint, which sought to add trade secret claims under federal and California law. Because the district court did not abuse its discretion, we affirm this portion of the district court's judgment as well.

The Arltons filed their motion for leave to file a first amended complaint on March 22, 2021, well after the January 8, 2021 deadline for such a request, given the operation of the Central District's local rules and the scheduling order. The district court found that the Arltons had failed to diligently pursue their proposed amendment. The court further determined that the Arltons lacked good cause for their untimely request because (1) the specific facts regarding Ingenuity that purportedly relate to the Arltons' trade secrets were publicly available and (2) the Arltons admitted they had already suspected Ingenuity incorporated their trade secrets as far back as when they filed their original complaint.

The Arltons assert that the district court abused its discretion by ignoring their evidence of good cause, namely that they did not receive relevant discovery from

---

[3]    We need not, and do not, reach the issue of whether the same *de minimis* use doctrine we have recognized in connection with infringement under 35 U.S.C. § 271, *see Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1349 (Fed. Cir. 2000), applies equally to § 1498 immunity.

AeroVironment until December 30, 2020. Thus, they continue, even expending reasonable efforts it was just not possible to develop their trade secret claim before the January 8, 2021 deadline to meet and confer before filing a motion for leave to amend the pleadings. In the Arltons' telling, the district court applied an overly exacting standard, requiring them to exercise "extreme diligence" rather than, as should have been required, reasonable diligence.

The district court did not abuse its discretion. For one thing, the Arltons, after obtaining new evidence supporting a potential trade secret claim on December 30, 2020, did not (until after the deadline for amendment had passed) inform the district court of what they had recently learned or of their need for additional time to prepare their amendment. The Arltons admitted they suspected Ingenuity incorporated their trade secrets at the time they brought this case. Yet, for whatever reason, they did not pursue the trade secret claim until very close to the scheduling order's deadline for amendment of pleadings. As importantly, there is no clear error in the district court's finding that much of the information about Ingenuity on which the Arltons predicate their trade secret claim was publicly available, and therefore accessible to the Arltons if they had acted with diligence, long before January 2021.

Hence, we affirm the district court's denial of the Arltons' motion to file a first amended complaint.

V

Lastly, we turn to AeroVironment's cross-appeal, which seeks to overturn the district court's denial of its motion for attorneys' fees under 35 U.S.C. § 285. Here again we find no abuse of discretion and, thus, affirm.

Section 285 authorizes a district court to award attorneys' fees to the prevailing party in an exceptional patent case. *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). An exceptional case is

simply one that "stands out from others," either in terms of "the substantive strength of a party's litigating position" or "the unreasonable manner in which the case was litigated." *Id.* at 554-55. A case may be exceptional even if it is not objectively baseless or frivolous. *See id.*

AeroVironment predicated its attorneys' fees motion principally on its contention that "the readily-apparent and indisputable applicability of § 1498 made the Arltons' claims frivolous from the start." Cross-Appellant's Br. at 55. While AeroVironment also argues that the manner in which the Arltons litigated renders the case exceptional, their insistence that the Arltons litigated unreasonably rests entirely on the premise that their claims were frivolous. *See, e.g.*, *id.* at 60 ("Appellants' lack of diligence into the viability of their claims is inexcusable.").

The district court's rejection of AeroVironment's characterization of the Arltons' case and their litigation conduct was not an abuse of discretion. The district court found this case was not "cut and dried" and that the Arltons did not "ma[k]e frivolous arguments in opposing summary judgment." J.A. 37; *see also* J.A. 38. To the contrary, the district court remarked that it had needed to undertake "a careful analysis of [a] nuanced area of law" before ruling on the Arltons' § 638 theory. J.A. 37-38. Just because the district court rejected the Arltons' claim does not mean this was an easy call or that this is an exceptional case. *See Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020) (holding that § 285 is not intended "to punish a party for losing") (internal quotation marks omitted).

Accordingly, we affirm the district court's denial of AeroVironment's motion for attorneys' fees.

## VI

We have considered the parties' remaining arguments but do not find them persuasive.  For the foregoing reasons, we affirm.

**AFFIRMED**

Costs

Each party to bear its own costs.